THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERARD COOPER, Defendant-Appellant.

First District (1st Division)   No. 85—2671

Opinion filed December 7, 1987.

Steven Clark and Bruce Mosbacher, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and George J. Andrews, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, defendant Gerard Cooper was convicted of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)) and was sentenced to 20 years in the Illinois Department of Corrections. On appeal, defendant contends that: (1) he was not proven guilty of murder beyond a reasonable doubt; (2) at most, his conduct constituted involuntary manslaughter; (3) three prior consistent statements of the State's key witness were erroneously introduced; and (4) the trial court erred in denying his motion for a new trial based on newly discovered evidence. For the reasons set forth below, we affirm.

The record reveals that on August 18, 1984, at approximately 2:30 a.m., three youths, Frederick Harris, Larry Gilkey, and Shone Hill, exited a southbound train at the Roosevelt and State subway station in Chicago and were heading toward the stairway when they were approached by another group of boys, one of whom was defendant. Vincent Stepter, who was present at the scene, testified on behalf of the State that defendant flashed gang signs at Harris and then forced Harris to make a gang sign. Thereafter, defendant called for his fellow gang members and proceeded to strike Harris in his head. Hill and Gilkey fled up the stairs, while defendant and another youth named Jeremiah Humphrey pursued Harris down the subway platform. When Harris reached the end of the platform and attempted to jump on the tracks, defendant kicked him in his back, causing him to fall on the third rail of the tracks, where he was electrocuted.

Charles Brown, another State witness, testified that he observed Humphrey and defendant chasing Harris. Once Harris reached the end of the platform, Brown saw defendant swing at Harris. He was uncertain, however, as to how Harris landed on the subway tracks. Similarly, Bryan Hoard testified that he observed defendant chase Harris and hit him on the shoulder, yet he did not see Harris fall onto the tracks. Gilkey and Hill were also unable to see what happened to Harris after they fled up the station stairs.

Defendant's case was based primarily on the testimony of Owen Lofton, whose presence at the scene was uncorroborated. Lofton stated that while defendant initially participated in the chase of Harris, he ceased when Harris reached the stairway. Lofton further testified that defendant did not kick Harris onto the tracks, but rather Harris slipped and fell on some water. Joel Larkings, the con-

ductor of the train which eventually ran over Harris' body, stated, however, that he observed no water on the platform or on the tracks. State exhibits of the scene showed no such water as well.

Lofton also attested to meetings on August 18 at Grant Park, August 20 at the "beach," and August 21 at the 26th and California courthouse, between Stepter, Brown, and several other youths involved in the incident during which Stepter urged them to blame defendant for the offense. Both Brown and Stepter denied the occurrence of these meetings at trial.

Michael Nicholson testified for the defense that he did not see defendant chase Harris. Yet, Nicholson had previously submitted a written statement to defense counsel stating that defendant was in fact one of the boys who chased Harris.

After the trial court found defendant guilty of murder, defense counsel presented the court with a motion for a new trial based on newly discovered evidence. The motion was denied and defendant was sentenced to 20 years in prison.

■ On appeal, defendant initially contends that he was not proven guilty of Harris' murder beyond a reasonable doubt as the testimony of the State's key witness, Vincent Stepter, was incredible. Specifically, defendant claims that Stepter had motivation to lie because he was once a suspect in the case, he had a personal vendetta against defendant stemming from an incident on July 4, 1984, when defendant abandoned Stepter during a fight, and Stepter had received immunity from prosecution in the instant offense as well as had an unrelated robbery charge dropped by the prosecution in exchange for his truthful testimony at trial. Defendant additionally contends that there were numerous inconsistencies between Stepter's testimony and that of the other witnesses. This argument is without merit.

It is well established that a reviewing court will not substitute its judgment for that of the trier of fact who heard the evidence and had the opportunity to observe the demeanor of the witnesses absent evidence so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt of defendant's guilt. (*People v. Adams* (1984), 129 Ill. App. 3d 202, 472 N.E.2d 135.) It is the function of the trier of fact, and not the court of review, to determine the credibility of witnesses and, where the evidence is merely conflicting, the trier of fact's judgment will stand. *People v. Visnack* (1985), 135 Ill. App. 3d 113, 481 N.E.2d 744.

■ After reviewing the record, we conclude that the evidence is not so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory to justify reversal of defendant's conviction. In addi-

tion to Vincent Stepter, Charles Brown, Bryan Hoard, and defense witness Mike Nicholson all testified that defendant chased Harris at the subway station on August 18. Three of them observed defendant strike Harris. Owen Lofton's testimony that Harris fell and slipped on water was refuted not only by State exhibits, but also by Joel Larkings, the conductor of the oncoming train, who stated no water was present on the platform or on the subway tracks. While it is true that Stepter was the only witness who actually saw defendant kick Harris onto the tracks, the positive identification by one credible witness is normally sufficient to sustain a conviction. (*People v. Molstad* (1984), 101 Ill. 2d 128, 461 N.E.2d 398.) Furthermore, the mere fact that a witness was at one time a suspect in a criminal investigation does not mean that his testimony should be disbelieved; rather, it may be indicative of nothing more than his presence in the wrong place at the wrong time. *People v. Hunt* (1981), 99 Ill. App. 3d 958, 426 N.E.2d 568.

With respect to the grant of immunity and the agreement to dismiss Stepter's pending robbery charge, the record indicates that such actions took place after Stepter had already made several statements implicating defendant in the offense. Moreover, Owen Lofton's testimony that he overheard Stepter on three separate occasions urge the others to blame defendant for the offense was not only denied by Stepter and Brown, but it also was never corroborated by any defense witness.

■■ ■ Equally unavailing is defendant's contention that he may not properly be held liable for Harris' murder under the theory of accountability. In order to hold an individual accountable for the conduct of another, the State must prove beyond a reasonable doubt that: (1) defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this participation must have taken place either before or during commission of the offense; and (3) it must have been with the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Schlig* (1983), 120 Ill. App. 3d 561, 458 N.E.2d 544.) It is not necessary to prove that the defendant participated in the commission of the act which constituted the offense. (*People v. Tyler* (1979), 78 Ill. 2d 193, 399 N.E.2d 975.) Rather, evidence that the accused attached himself to a group bent on illegal acts with knowledge of its design supports the inference that he shared the common illegal purpose and will sustain his conviction as a principal for a crime committed by another in furtherance of the venture. *People v. Schlig* (1983), 120 Ill. App. 3d 561, 458 N.E.2d 544; *People v. Wright* (1976), 43 Ill.

App. 3d 458, 357 N.E.2d 224.

■ Here, defendant, a member of the "Disciples" street gang, was one in a group of boys that approached Harris and his companions on August 18, and flashed gang signals at them. Defendant also struck Harris and was an active participant in the chase of Harris. Even assuming that defendant withdrew from the chase before he reached the end of the platform as he contends, defendant did nothing to stop the chain of events he helped initiate. Proof that a person was present at the commission of a crime without disapproving or opposing it may be considered by the trial court in determining whether the defendant abetted the commission of the crime. (*People v. Schlig* (1983), 120 Ill. App. 3d 561, 458 N.E.2d 544.) Moreover, it is the communication of the intent to withdraw and not the mere fact of withdrawal that determines whether one who advised, encouraged or incited another to commit a crime is to be released from liability. (*People v. Rybka* (1959), 16 Ill. 2d 394, 158 N.E.2d 17; *People v. Richard* (1980), 90 Ill. App. 3d 322, 413 N.E.2d 5.) There was no evidence in the instant case that defendant communicated an intention to withdraw from the situation which led to Harris' death. Accordingly, even under an accountability theory, defendant would nevertheless be liable for Harris' murder.

■ Defendant next argues that even assuming defendant did in fact kick Harris onto the subway tracks, at most, such actions constituted involuntary manslaughter, particularly since the third rail was 8 feet, 7 inches from the platform edge. Again, we disagree.

Section 9—1(a) of the Criminal Code of 1961 defines the crime of murder and provides in part that "[a] person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death *** [h]e knows that such acts create a strong probability of death or great bodily harm to that individual or another." (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(2).) To prove the crime of murder, it is not necessary to show that the defendant has a specific intent to kill or do great bodily harm or that he knows with certainty that his acts will achieve those results. " 'It is sufficient to show that he voluntarily and wilfully committed an act, the natural tendency of which was to destroy another's life.' " *People v. Bartall* (1983), 98 Ill. 2d 294, 307, 456 N.E.2d 59, 65, quoting *People v. Latimer* (1966), 35 Ill. 2d 178, 182-83, 220 N.E.2d 314, 317.

■ Here, the "natural tendency" of defendant's voluntary and wilful action was to destroy Harris' life. Prior to kicking Harris, defendant flashed gang signs at Harris, struck him in the head, and led a chase of him down the platform. When Harris was cornered at

the end of the platform, defendant kicked him in the back onto the subway tracks. At the very least, defendant knew such conduct would result in great bodily harm to Harris, regardless of the location of the third rail, as Harris could have been hit by a train or been seriously injured from the fall. Certainly, this constitutes more than the "reckless" type of conduct necessary for the crime of involuntary manslaughter. Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).

Defendant next asserts that the trial court should have prohibited the prosecutor from introducing Stepter's prior consistent statements to the police, assistant State's Attorney, and the grand jury, and from referring to them in closing and post-trial arguments. While prior consistent statements are generally inadmissible to bolster a witness' in-court testimony (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. Olesch* (1986), 143 Ill. App. 3d 577, 492 N.E.2d 1381), they may be introduced to rebut an expressed or implied charge that the witness' testimony is a recent fabrication or that he is motivated to testify falsely. (*People v. Silvestri* (1986), 148 Ill. App. 3d 980, 500 N.E.2d 456.) For the latter exception to apply, the witness must have told the same story when the motive did not exist. (*People v. Tidwell*, (1980), 88 Ill. App. 3d 808, 410 N.E.2d 1163.) Defendant argues that this standard was not met, as Stepter did not go to the police the day of the incident, he knew he was a suspect when initially questioned about the incident, and he could foresee that he would be granted immunity and have his pending robbery charge dropped if he implicated someone else. We disagree.

First, there is nothing in the record to indicate that Stepter knew the prosecution would grant him immunity or drop his pending robbery charge when he gave his statements implicating defendant. According to defense counsel's representation at oral argument, Stepter's familiarity with the criminal justice system was limited only to his prior arrest for robbery. Second, it is not unusual for a potential witness, particularly one who is out on probation, to be apprehensive about becoming involved in a criminal investigation. And finally, unlike the defendant's accomplices in *People v. Green* (1984), 125 Ill. App. 3d 734, 466 N.E.2d 630, relied on by defendant, Stepter had no reason to know that he was a prime suspect and faced with criminal liability in Harris' murder, as he was only 18 years old at the time and had no access to the police report in which he was listed as a possible offender. The fact that Stepter was given *Miranda* warnings prior to questioning does not prove that Stepter knew of his suspect status since police often administer *Miranda* warnings to eyewitnesses at the outset of a criminal investigation in order to preserve

the validity of any statements they may obtain.

■■■ Finally, defendant contends that the trial court improperly denied his motion for a new trial based on the potential testimony of an alleged occurrence witness known as "Waldo," who was located by defendant's mother after trial. The standard of review for a motion for a new trial on the ground of newly discovered evidence is that the new evidence must be of such conclusive character that it will probably change the outcome on retrial. (*People v. Jones* (1987), 157 Ill. App. 3d 1006; *People v. Carpenter* (1979), 74 Ill. App. 3d 770, 393 N.E.2d 50.) The new evidence must be material to the issue and not merely cumulative, must have been discovered after trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. (*People v. Lovitz* (1984), 127 Ill. App. 3d 390, 468 N.E.2d 1010.) Motions for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts and should always be subjected to the closest scrutiny. (*People v. Martin* (1983), 112 Ill. App. 3d 486, 445 N.E.2d 795.) The question is largely discretionary on the part of the trial court and the exercise of its discretion will not be disturbed on appeal absent manifest abuse. *People v. Carpenter* (1979), 74 Ill. App. 3d 770, 393 N.E.2d 50.

■■■ Having considered the record in the present case, we conclude that the trial court did not abuse its discretion by denying defendant's motion for a new trial. Defense counsel, through discovery materials tendered approximately eight months before trial, became aware of a potential witness named Edward Anderson, later determined to be "Waldo," an occurrence witness known by defendant and mentioned in a police report dated August 21, 1984. Contained in those discovery materials were copies of all police reports, as well as Anderson's statement to the police, his social security number, and his last known address. While Anderson's phone had been disconnected, defendant never attempted to seek out a different number for Anderson, go to the listed address, later found to be Anderson's father's residence, or utilize his social security number to determine his place of employment. Under these circumstances, we conclude that defendant did not exercise due diligence in attempting to locate Anderson prior to trial, and the mere fact that defendant was not aware Anderson was an occurrence witness did not negate his duty to do so.

*People v. Pirovolos* (1970), 126 Ill. App. 2d 361, 261 N.E.2d 701, cited by defendant, is distinguishable from the present case. In *Pirovolos*, where the court held that the trial court improperly denied defendant's petition for a new trial based on newly discovered evidence, the State disclosed only the first name of the occurrence wit-

ness to defendant prior to trial, and it did not furnish any address. Here, however, as noted above, defendant had Anderson's address as well as his social security number, and therefore had sufficient information with which to find Anderson.

Furthermore, Anderson's testimony, as disclosed in his affidavit, that Harris "jumped down onto the tracks" would be merely cumulative of Lofton's incredible testimony at trial and would not sway the trial court into reaching a different result as there was an overwhelming amount of credible evidence implicating defendant in the offense.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.