THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LYLE C. KELCHNER, Defendant-Appellant.

Second District   No. 2—89—1311

Opinion filed October 30, 1991.

26

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel A. Fish, State's Attorney, of Dixon, and Howard M. Goldrich, of Skokie (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, Lyle Kelchner, was convicted of aggravated criminal sexual abuse pursuant to section 12—16(c)(1)(i) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)(i)) and was sentenced to an extended term of 10 years' imprisonment. Defendant contends on appeal that he was not proved guilty beyond a reasonable doubt. Defendant also claims that the trial court abused its discretion in sentencing him to an extended term of 10 years' imprisonment.

On July 15, 1989, defendant was charged by information with aggravated criminal sexual abuse. The information alleged that defendant, who was 17 years of age or older, committed an act of sexual conduct with the victim, who was under the age of 13, in which defendant knowingly fondled the vaginal area of the victim through her clothing for the purpose of defendant's sexual arousal.

On October 24, 1989, a jury trial was held. The first person to testify was the victim. The victim stated she was 10 years old and that on July 15, 1989, she had been swimming in Mendota, Illinois, with her sister, defendant, his wife, and their baby. After the party finished swimming, they returned to defendant's apartment, which was located at the Alpha Motel in Dixon, Illinois. The victim testified that it was still light outside. The victim also stated that two adults, Kent and Linda, and their child Ricky were also present at defendant's apartment.

After having something to eat, the victim, her sister, and Ricky went outside to play. The adults were still in the house. Defendant came outside and came up behind the victim and grabbed her. The victim testified that she recognized defendant when he ran past her to go back into the house. She also stated that defendant grabbed her where "I go pee and he squeezed." This incident lasted about two seconds. The victim further testified that later when it was dark, defendant again came up to her from behind and again grabbed her "where I go pee and he squeezed." The victim stated that defendant did not merely brush the back of her pants, but reached in between her legs to her crotch. The second incident lasted about a second, and again the victim said she saw defendant as she turned around and he was going back into the house.

At the time these incidents occurred, the victim testified that the only other people outside were her sister, who was pushing defendant's baby around, and Ricky. The victim stated that during the second incident in question her sister was in the driveway with defendant's baby and the victim was over across the driveway. Dur-

ing both incidents, Ricky was "down the hill" from the victim. The victim testified that the incident made her feel "mad" and "angry."

The next witness to testify for the State was Officer Jean Miller of the Dixon, Illinois, police department. She testified that she had interviewed the victim and arrested defendant and that defendant lived at the Alpha Motel in Dixon, Illinois, which is located in Lee County. After Officer Miller testified, the State rested.

Defendant moved for a directed verdict which the trial court denied. Defendant then called Kent Portner as a witness. Portner testified he had been defendant's friend for about five years. He stated that on the day in question he was helping defendant install a television antenna. He stated that he was outside most of the time and only went inside the apartment once or twice. He recalled that while he was working and when defendant was outside, the girls would tease defendant by calling him by his brother's name, Frank. When this happened, defendant would tickle the victim under her arms. Portner stated that he never saw defendant touch the victim anywhere but under her arms and that when defendant was outside, Portner could see him at all times.

However, on cross-examination, Portner admitted that his work on the antenna required that he twist the antenna wires, move the antenna to provide for better reception, and look into the house to see how the television channels were coming in on defendant's television set. In spite of these activities, Portner maintained that defendant was in his sight at all times when defendant and the girls were outside. After Portner testified, the defense rested.

In rebuttal, the victim said that during the incidents in question Portner had been inside the apartment. The jury found defendant guilty as charged, and the trial court entered a judgment of conviction.

During the sentencing hearing, the court noted that defendant was eligible for an extended term pursuant to section 5—5—3.2(b)(1) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(1)) as defendant had previously been convicted in Illinois of the same or greater class felony. The trial court also found that defendant was eligible for the extended term because the "offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(2).

The trial court reviewed factors in aggravation. In referring to the factor "caused or threatened serious harm" (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(1)), the trial court stated:

"The statute is clear in regard to the questions the Court has to consider. That the Defendant's conduct cause or threaten serious harm. Well, I suppose that depends upon whether—how you interpret the phrase serious harm. There is no question that the studies in this country show that sexual abuse of children cause [sic] serious harm, which has a lasting effect, sometimes for their entire lives, and there are flashbacks. It occurs and continues to occur and effects [sic] their relationships with male figures, or female figures depending upon which sex they are, and that sometimes the counseling process goes for many, many years before the child—the affects [sic] of this conduct can be mitigated."

The trial court reviewed mitigating factors concerning defendant. It referred to a letter attached to the presentence investigation report from the Sinnissippi Mental Health Center written in May 1986. The letter indicated that defendant could not be evaluated for treatment until he changed his position of denial for the offense of sexual abuse. The trial court noted defendant's attitude then and the likelihood that defendant would commit the crime again. The court also referred to studies concerning pedophiles which showed that they continue to engage in the same conduct.

After balancing the need to protect society against defendant's rehabilitative potential, the trial court ordered that defendant be given an extended sentence of 10 years' imprisonment in the Illinois Department of Corrections.

Defendant contends on appeal that he was not proved guilty beyond a reasonable doubt because the complainant's testimony was not clear and convincing and there was no corroborating evidence. Previously, cases have held that where a defendant denies wrongdoing, a conviction of sexual abuse will be upheld only where the complainant's testimony is clear and convincing unless it has been substantially corroborated by other evidence. (See *People v. Diaz* (1990), 201 Ill. App. 3d 830; *People v. Thompson* (1990), 198 Ill. App. 3d 417.) As the State notes in its brief and defendant in his reply brief, sex-crime victims are no longer placed under an additional burden regarding how persuasive their testimony must be. (*In re A.J.H.* (1991), 210 Ill. App. 3d 65, 71.) In *People v. Pintos* (1989), 133 Ill. 2d 286, 291, the supreme court disapproved of a particularized definition of reasonable doubt. The supreme court stated that the reasonable doubt test set forth in *People v. Collins* (1985), 106 Ill. 2d 237, 261, should be applied in reviewing the sufficiency of evidence in all criminal cases. *Pintos*, 133 Ill. 2d at 291.

A reviewing court will not set aside a conviction on the basis of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of defendant's guilt. (*Collins*, 106 Ill. 2d at 261.) It is the jury's function to determine the guilt or innocence of defendant. (*People v. Eyler* (1989), 133 Ill. 2d 173, 191.) It is not this court's function to retry the defendant when considering a challenge to the sufficiency of the evidence of his guilt. (*People v. Furby* (1990), 138 Ill. 2d 434, 455.) " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *** 'Once a defendant has been found guilty of the crime charged, the factfinder's [*sic*] role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' (Emphasis in original.)" *Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

Furthermore, it is the jury's function to weigh the credibility of the witnesses and to resolve conflicts or inconsistencies in their testimony. (*Eyler*, 133 Ill. 2d at 191.) A reviewing court will not substitute its judgment for that of the trier of fact who heard the evidence and had the opportunity to observe the demeanor of the witnesses unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to cause a reasonable doubt of defendant's guilt. (*People v. Cooper* (1987), 164 Ill. App. 3d 734, 737.) Because it is the function of the trier of fact, and not the court of review, to determine the credibility of the witnesses, where evidence is merely conflicting, the trier of fact's judgment will stand. *Cooper*, 164 Ill. App. 3d at 737.

Defendant claims he was not proven guilty beyond a reasonable doubt because: (1) the complainant was inconsistent in her testimony about where she was touched; and (2) there was not a reasonable inference from the evidence that defendant acted with the intent to arouse or gratify himself sexually. Defendant argues no intent was shown where there was only casual touching between the victim and himself and where defendant would be taking an absurd risk in fondling the complainant when there were witnesses outside, including Portner, who would have been able to observe the illegal activity.

We first conclude that the complainant's testimony was not inconsistent. Defendant argues that complainant made varying

statements as to where she was touched. For example, when asked where she was touched during both incidents, complainant responded that defendant came up behind her and grabbed and squeezed her "where I go pee." When asked to further elaborate exactly where she was touched, complainant stated it was "in the middle" of her crotch and where her "legs came together." She further stated that defendant did not simply brush the back of her pants but had reached through from her back side. These statements, far from being inconsistent, indicate that the complainant was describing the same area each time she was asked where she was touched. Therefore, we find no inconsistencies in her testimony about where the complainant was touched.

Next defendant contends that the evidence did not show that he acted with the intent to arouse or sexually gratify himself because the complainant's testimony did not specifically indicate where she was touched and evidence was presented that defendant had been seen tickling the complainant in a nonsexual manner. Defendant also contends that an inference can be made that defendant would have been taking an incredible risk to touch the complainant in an illegal manner with the variety of witnesses that were outside at the time of the incidents in question. Again we do not find defendant's argument persuasive.

■■ We first note that defendant's intent may be established by circumstantial evidence and may be inferred from defendant's conduct. (*People v. Goebel* (1987), 161 Ill. App. 3d 113, 125.) As noted before, the complainant was clear as to where on her body she was touched. She also testified that defendant did not merely touch her there but that he "squeezed." Thus it could be inferred that defendant's acts constituted more than mere casual touching and that his acts actually involved the intent to cause his sexual arousal.

Defendant also argues that because of the number of people present outside when the acts occurred, defendant's intent to commit the charged offense is even less likely considering the likelihood that defendant would be caught in the act. We disagree. Even though some people were outside during defendant's criminal acts, they were not in a position to watch defendant and the victim at all times. The victim's sister was outside, but the victim testified that her sister was in the driveway while she was on the other side of the driveway. Ricky Portner, the son of Kent Portner, was also outside, but the victim testified that he was "down the hill" from the victim. Kent Portner testified that he was outside and observed defendant at all times; however, he admitted that he was also work-

ing on the television antenna. In addition, the victim testified that at the time the incidents occurred Portner was inside the apartment. Finally, the duration of the illegal acts in question was only about two seconds; therefore, it can be inferred that defendant would be highly likely to commit the crime without detection even with other people outside. Thus, in viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient to permit the jury to conclude that all the elements of the crime were present.

Defendant next argues that the trial court abused its discretion in sentencing him to an extended term of 10 years' imprisonment. Generally, a trial judge is given broad discretion in the sentencing of a defendant, and absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) A trial court's decision will not be overturned unless it is manifestly unjust or palpably erroneous. (*People v. Hominick* (1988), 177 Ill. App. 3d 18, 39.) The imposition of an extended term is also discretionary with the trial court. *People v. Lighthall* (1988), 175 Ill. App. 3d 700, 708.

Defendant contends that the trial court abused its discretion in sentencing him to an extended term based upon its finding that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(1).) He asserts that the evidence does not support this finding. The State does not claim that the brutal or heinous factor was present in the offense.

In addition to noting the existence of the brutal or heinous behavior factor in the offense, the trial court also referred to the factor that an extended term was applicable where defendant was previously convicted of the same or greater class felony within 10 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(1).) The trial court noted defendant's two prior convictions in 1986 of aggravated criminal sexual abuse, and the record supports that finding. Defendant concedes that he was eligible for an extended term due to his prior convictions.

■ Sentencing decisions are matters of judicial discretion which must be afforded great weight and deference, and so long as the sentence imposed is within statutory limits, the sentence will not be set aside absent an abuse of discretion. (*People v. Sanford* (1983), 116 Ill. App. 3d 834.) Defendant's prior convictions are sufficient for imposition of an extended term. (*People v. Jackson* (1984), 122 Ill. App. 3d 166.) Accordingly, even if the finding with respect to

the character of the offense was in error, an extended term was a proper discretionary sentence under the statute. (*Sanford*, 116 Ill. App. 3d at 845; see *Jackson*, 122 Ill. App. 3d at 170.) We need not address his argument concerning the brutal nature of the offense. *People v. Tipton* (1990), 207 Ill. App. 3d 688.

Defendant argues that there is no basis in the record to support the trial court's finding that his conduct "caused or threatened serious harm." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(1).) He points out that there was no testimony or other information such as a victim-impact statement which indicated any physical or psychological harm to the victim. Instead, the trial court relied upon unidentified studies which allegedly showed that children of sexual abuse are harmed and then found that defendant's conduct caused or threatened serious harm.

The trial court's reference to "studies in this country" concerning the harm to sexual abuse victims appears to be a personal observation on how the phrase "serious harm" may be interpreted in considering this aggravating factor. (See *People v. Bosley* (1990), 197 Ill. App. 3d 215.) The trial court understood serious harm to include psychological harm. Although psychological harm to a child is a proper aggravating factor (*People v. Ulmer* (1987), 158 Ill. App. 3d 148), the remarks tend to indicate an assumption on the trial court's part that such serious harm resulted to the victim based on the unidentified studies.

While it was improper for the trial court to consider defendant's conduct caused serious harm based on this factor, the reliance by the trial court on an improper factor in aggravation does not always require a reviewing court to remand the case for resentencing. (*People v. Harvey* (1991), 213 Ill. App. 3d 83.) Where it can be determined that an improper factor in aggravation did not lead to a greater sentence, no reversal is required. (*People v. McCon* (1989), 191 Ill. App. 3d 207; *People v. Davis* (1984), 124 Ill. App. 3d 813.) This standard was satisfied in this case. The trial court relied on other factors in aggravation. It was concerned with defendant's past criminal history, his rehabilitative potential based upon this history, the need to deter others and that the interest and safety of society, especially children, were best served by a lengthy prison term. Therefore, we conclude that the trial court's improper consideration of serious harm did not result in defendant receiving a greater sentence than would have been imposed without it.

Finally, defendant contends that the trial court's conclusions regarding his attitude towards the crime and the likelihood he would

commit the offense again were based on insufficient and improper evidence. He claims there was no real information about his lifestyle in 1986 which led to those crimes nor was there any evidence that he was advised to make changes or that he had accomplished any changes. Defendant also points to the trial court's reference to unidentified studies on pedophiles as improper.

In imposing sentence the trial court may consider many factors including defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. (*Perruquet*, 68 Ill. 2d 149.) The trial court must consider all matters reflecting upon defendant's personality, propensities, purposes, tendencies and indeed every aspect of defendant's life relevant to the sentencing proceeding. (*People v. Ward* (1986), 113 Ill. 2d 516.) The lack of remorse and defendant's failure to show a penitent spirit may be properly considered in sentencing and must be evaluated in light of all the other information the court has about defendant. *Ward*, 113 Ill. 2d at 529.

■ The trial court reviewed the 1986 letter from the Sinnissippi Mental Health Center which provided that defendant could not be evaluated for treatment because of his denial of the crime. The trial court acknowledged that defendant's attitude may have been different then, but also noted that it did not know whether defendant claimed innocence now because he did not make a statement. Defendant had not shown any remorse. Defendant had committed aggravated sexual abuse again. The trial court had a presentence investigation report on defendant and was aware of defendant's history and background. The 1986 letter indicated that unless defendant acknowledged his crime, he could not even be evaluated let alone treated. This information showed defendant's lack of desire to change his behavior in 1986 through treatment. Defendant's present offense showed a failure to change his behavior since that time, *i.e.*, he again committed a sexual abuse offense. There was sufficient evidence upon which the trial court could base its considerations of defendant's attitude towards the crime and the likelihood of its reoccurrence.

■ Defendant argues that the trial court abused its discretion when it relied on unnamed "studies" about pedophiles which showed that it was difficult to rehabilitate them. (*People v. Harris* (1989), 187 Ill. App. 3d 832.) However, the trial court simply noted the unnamed "studies" in passing and then stated it did not know if defendant's conduct would be the same. Therefore, we find no abuse of discretion.

■■ Although defendant argues that the sentence is counterproductive to his rehabilitation, the difficult task of fashioning a sentence which strikes a balance between the protection of society and the rehabilitation of the offender is best left to the trial court. (*People v. Burton* (1984), 121 Ill. App. 3d 182.) After a careful review of the record, we cannot say the trial court abused its broad discretion in sentencing defendant.

The judgment of the trial court is affirmed.

Affirmed.

REINHARD, P.J., and BOWMAN, J., concur.