2025 IL App (1st) 241895-U

SIXTH DIVISION

February 28, 2025

No. 1-24-1895B

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | Nos. 21 CR 14584 |
| | ) | and 23 CR 11553 |
| | ) | |
| JAYQUAN SCHWEDLER, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1    ***Held:***    The circuit court's pretrial detention order is affirmed where the State proffered sufficient facts to satisfy the statutory requirements for pretrial detention and appellant's procedural complaints do not warrant reversal.

¶ 2    Defendant Jayquan Schwedler appeals from the circuit court's orders detaining him pending his probation revocation hearing per 730 ILCS 5/5-6-4(b) (West 2022) and article 110 of the Code of Criminal Procedure of 1963 (725 ILC 5/art. 110 (West 2022), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023) and Public Act 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act)). On appeal, he raises numerous claims, including that the State failed to timely bring him before the court post-arrest, used the wrong form to request detention, and erred in finding his detention was appropriate per the Act. We affirm.

¶ 3                                    BACKGROUND

¶ 4    On August 8, 2024, Schwedler appeared before the circuit court on a violation of probation (served under the Treatment Alternatives for Safe Communities (TASC) program) petition by the State in case number 23 CR 11553 ("2023 case"), in which he was charged with burglary, amongst other charges. Schwedler was also serving a TASC probation term on case No. 21 CR 14585 ("2021 case") at the time, in which he was charged with manufacturing or delivery, or possession with intent of manufacturing or delivery, of fentanyl, though the State did not include this case in its August 8 petition. The court reporter could not locate the transcript from the August 8, 2024 proceeding. Following the proceeding, the court detained Schwedler and scheduled a hearing for the following day. The record shows Schwedler's case appeared on the 12:30 pm court call on August 8. The record further indicates Schwedler was arrested at 2:56 a.m. on August 6, 2024, and his charge was first approved by the State's Attorney on August 7, 2024 at 6:31 p.m., with "final approval" at 8:30 p.m.

¶ 5    To apply for Schwedler's detention on August 8, the state used a form titled, "Petition for Violation of Probation Hearing and Warrant/Setting of Bail." In a section describing the alleged violation, the State wrote that on August 6, 2024, Schwedler "committed felony offense reckless

conduct [with great bodily harm]." A line at the bottom of the form titled "Bail Set at $" was completed with the word "detained."

¶ 6    Another proceeding occurred on August 9, 2024, after which the circuit court ordered Schwedler's detention on both the 2021 and 2023 cases. The order from August 9, 2024, stated Schwedler was "in custody" and "ordered detained," while the circuit court's halfsheet states Schwedler's "motion for release" was denied. The record also contains a "Petition for Violation of Probation and Warrant/Setting of Bail" form for the 2021 case, stamped filed on August 9, 2024, which was substantively identical to the August 8, 2024 petition.

¶ 7    During the August 9 hearing, the assistant public defender explained that Schwedler was not currently detained pursuant to the new charge. The State's attorney clarified that it sought Schwedler's detention only insofar as the new charge constituted a violation of probation in both the 2021 case and 2023 case. The State's attorney then proffered that on August 6, 2024, "officers," while monitoring cameras, noticed Schwedler and other alleged co-offenders chasing the victim on foot near the tracks of the Chicago Transit Authority's (CTA) 69th Street Red Line stop in Chicago. During the chase, the victim "fell on the tracks in front of a parked train and was electrocuted." The victim was unconscious and in critical condition at the time of the hearing. Schwedler was arrested and charged with reckless conduct causing great bodily harm.

¶ 8    The assistant public defender responded that the proof was not evident or presumption great that Schwedler committed the charged offense because the State did not establish Schwedler acted recklessly in the absence of evidence on why the chase occurred or his two co-offenders. Alternatively, counsel asked for release with conditions, citing that Schwedler had a plan to live with his girlfriend if released, was currently employed and raising his one-month-old child, and volunteered in the community.

3

¶ 9    The circuit court ordered Schwedler's detention, stating he "committed a crime of violence while out on probation on these two cases" and "the State has met their burden of proving that the presumption is great and the proof is great the defendant committed this offense that he's charged with while on probation."

¶ 10    On September 13, 2024, Schwedler filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2), (3) (eff. Apr. 15, 2024). Therein, he contended the circuit court erred in ordering his detention pending his probation revocation hearing because, per 730 ILCS 5/5-6-4(b) (West 2022), he was entitled to the full protections of the Act, but had not received them. Specifically, Schwedler claimed (1) the State never filed a "verified petition" for pre-hearing detention; (2) the court's August 9 written order did not comply with 725 ILCS 5/110-6.1(h)(1) (West 2022); (3) he did not receive a first court appearance within 48 hours of arrest, as required by 725 ILCS 5/109-1(a) (West 2022); (4) the State failed to show the proof was evident or presumption great that he committed the charged offense because the "act of chasing someone, even at a train station, is not enough to amount to reckless conduct"; and (5) the State failed to show he posed a real and present threat or that no less restrictive conditions existed to mitigate his threat because it "provided no aggravation aside from the alleged commission of a new offense."

¶ 11    At a proceeding on September 17, 2024, the circuit court heard argument on the motion for relief. Before addressing the motion, the court noted that Schwedler was also present in court to be arraigned on charges of "involuntary manslaughter and mob action," because the victim of the CTA chase had died between court appearances. The assistant public defender asked to be heard on the motion for relief, then argued in support of the motion that (1) Schwedler was not brought before a court within 48 hours, and it was the State's burden to explain the delay, which it had not done; (2) the State failed to file a verified detention petition per the Act; (3) the circuit court had

4

failed to enter a written order "detailing its reasons for detention on the violation." Counsel continued that the State failed to establish the proof was evident or presumption great because it did not proffer facts to show Schwedler's conduct during the chase was "reckless." In support, counsel contended that running on a CTA platform was not inherently reckless, as people often run on CTA platforms to catch trains. Additionally, the victim may have taken something from Schwedler and attempted to flee, forcing the pursuit. Finally, counsel updated the court that Schwedler no longer had a place to live if released, and would need "judicial housing" should the court order electronic monitoring or a curfew.

¶ 12    The State's attorney responded that the details of the case sufficed to show Schwedler acted recklessly, as Schwedler and his co-offenders "harassed" the victim "on the train" and "pushed him around," prompting the victim to "flee this defendant and the two other defendants" by running "out on the train tracks," where he "fell and hit his head and was electrocuted."

¶ 13    The circuit court denied the motion for relief. In so finding, the court stated,

"[T]he State has shown and the proof is evident or the presumption great that the defendant has committed an eligible offense, involuntary manslaughter, to constitute a violation of probation on two cases. The defendant poses a real and present threat to the safety of any person or persons or the community *** [because] the defendant and two others chased the victim on CTA property causing the victim to jump on the third rail of the CTA tracks causing death. No condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case. Less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case because the defendant was on two probations for [burglary] and

5

narcotics. I believe even, if I remember correctly, that the [burglary incident] was on CTA property if I'm not mistaken."

¶ 14   That same day, the circuit court entered an order using the "Order after Pretrial Detention Hearing" form. On the order, the court crossed out the language that the hearing was on the "State's Petition to Deny Pretrial Release" and replaced it with the handwritten phrase "for Violation of Probation." It wrote regarding whether the proof was evident or presumption great: "involuntary manslaughter to constitute a violation of probation on two cases." Concerning the threat Schwedler posed, the court wrote: "defendant and two others chased victim on CTA causing victim to jump on third rail (CTA) causing death." Finally, on mitigating conditions, the court wrote: "defendant was on two probations for burglary and narcotics and the new case occurred on CTA property."

¶ 15                                      JURISDICTION

¶ 16   The circuit court denied Schwedler's motion for relief on September 17, 2024, and he filed his notice of appeal that same day. Absent any indication Schwedler is no longer detained pending a revocation of probation hearing for the 2021 and 2023 cases, this court has jurisdiction pursuant to Illinois Supreme Court Rule 604 (h)(2), (3) (eff. Apr. 15, 2024) and 725 ILCS 5/110-6.1(j) (West 2022).

¶ 17                                      ANALYSIS

¶ 18   Schwedler raises numerous claims, all pursuant to the Act. First, the Act requires that a "person arrested with or without a warrant for an offense for which pretrial released may be denied *** shall be taken without unnecessary delay before the nearest and most accessible judge in that county *** within 48 hours, and a charge shall be filed." 725 ILCS 5/109-1(a) (West 2022). In interpreting this provision, other panels of this court have found that the statutory requirements were met when a defendant was brought before a judge within two days of an arrest, even where

6

the appearance technically occurred outside of the 48-hour window from arrest to first court appearance, so long as the first appearance occurred with "reasonable promptness." See *People v. Garduno*, 2024 IL App (1st) 240405-U, ¶¶ 10-13; *People v. Williams*, 2024 IL App (1st) 232219-U, ¶ 29 (citing *People v. Ballard*, 206 Ill. 2d 151, 177 (2002)).

¶ 19 Specific to detention, under the Act, a criminal defendant is presumed eligible for release and cannot be detained pending trial unless the State files a "verified petition" for pretrial detention. *Id.* §§ 110-6.1(a), (a)(1)-(8), (e) (West 2022). After the State files a verified pretrial detention petition, the circuit court must conduct a pretrial detention hearing, during which the parties can proceed by way of proffer to present the anticipated evidence of the case. 725 ILCS 5/110-6.1(c)(2), (e), (f)(2) (West 2022). At the hearing, the State bears the burden to establish by clear and convincing evidence that, in relevant part, (1) "the proof is evident or the presumption great that the defendant has committed" a qualifying offense; (2) the defendant poses a "real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (3) "no condition or combination of conditions" can mitigate the threat the defendant poses. *Id.* §§ 110-6.1(e)(1)-(3).

¶ 20 If the circuit court grants the State's petition, it must issue a written detention order "summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat." *Id.* § 110-6.1(h)(1). Specifically respecting mitigating conditions, the State cannot make this showing based only on the bare allegations of a violent underlying alleged offense. *People Stock*, 2023 IL App (1st) 231753, ¶¶ 20-21. When, as here, the parties submit evidence at a pretrial hearing only by means of proffer, "the reviewing court is not bound by the circuit court's factual findings and

may therefore conduct its own independent *de novo* review of the proffered evidence." *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 21    Under the Act, when a defendant currently on probation is charged with a new offense, the pretrial detention requirements of the Act may govern whether that defendant may be detained. Specifically, "if a petition to revoke probation alleges a violation that constitutes a criminal offense, pretrial release pending the revocation hearing is governed by article 110 of [the Act]." *People v. Dyer*, 2024 IL App (4th) 231524, ¶ 21. This means the defendant may only be detained in this scenario "if the new offense meets the criteria specified in [725 ILCS 5/110-6.1 (West 2022)]." *Id.* In other words, when the State seeks to detain a defendant on a violation of probation, and that violation is the charge of a new offense for which that defendant could be detained under the Act, the defendant can only be detained pending the probation revocation hearing if the Act's requirements for initial pretrial detention hearings are followed. The parties do not dispute that (1) Schwedler is being held pending his probation revocation hearing for both the 2021 and 2023 cases, and (2) the alleged violation consists only of accruing the new involuntary manslaughter charge, which would qualify him for pretrial detention under the Act. Accordingly, the State was required to abide by the requirements of the Act in pursuing his pre-revocation hearing detention.

¶ 22    Schwedler first claims his detention is invalid because he was not brought before a circuit court within 48 hours of his arrest. This presents a question of statutory interpretation, which we review *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45. He raises this claim in his other pending appeal, our order in which is also filed today, and our analysis of why the claim fails is repeated in both:

¶ 23 The record shows Schwedler's arrest occurred on August 6 at 2:56 a.m., and he was not brought before the court until August 8, 2024, on its 12:30 p.m. call. The State finalized its charging decision at 8:30 p.m., on August 7, 2024.

¶ 24 We find that Schwedler is not entitled to relief because he appeared approximately 10 hours after the 48-hour period from the time of his arrest. Other panels of this court have addressed, and rejected, nearly identical claims in situations where the defendant was brought to court on the second day following arrest, but more than 48 hours after the time of arrest. See *Garduno*, 2024 IL App (1st) 240405-U, ¶¶ 9-13; *Williams*, 2024 IL App (1st) 232219-U, ¶¶ 27-29. In so finding, the *Williams* court explained that the inclusion in the statute of the phrase "without unnecessary delay" provided latitude with respect to the 48-hour requirement, citing *Ballard*, 206 Ill. 2d at 177. In *Ballard*, our supreme court explained that so long as presentment was done with "reasonable promptness," timeliness requirements on this point were met. We agree with those resolutions and adopt their reasoning. Schwedler was not officially charged until the evening of August 7, and he appeared in court the next day on the 12:30 p.m. call. In accordance with *Ballard*, *Williams*, and *Garduno*, we find this constituted "reasonable promptness."

¶ 25 Schwedler next argues the State violated the statute by failing to file a "verified petition" pursuant to the Act's requirements, and thus never formally requested his detention. 725 ILCS 5/110-6.1(a) (West 2022). This is another issue of statutory interpretation that we review *de novo*. *Taylor*, 2023 IL 128316, ¶ 45. In support, he notes the probation violation form contains a block for "bail," but does not contain an express provision regarding detention, which the court had to write in. The record confirms that the State petitioned for Schwedler's detention via a verified violation of probation form, not a specific "petition for pretrial detention hearing" form. At the

August 9 proceeding, the State's attorney requested pre-revocation hearing detention on both of Schwedler's probation matters.

¶ 26   On this record, we find the State satisfied the Act's initial verified petition requirement. The State's selection of forms does not provide grounds for reversing the circuit court's detention decision under these circumstances, as the State's initiation of the detention proceedings via the violation of probation form was not improper, but was, in fact, necessary. The form alerts the court that the State's probation revocation theory is based on the defendant accruing a new criminal offense, and not a different type of violation, and it is this specific allegation that triggers the court's duty to apply the pretrial detention provisions of the Act in considering the defendant's pre-hearing release or detention. See *Dyer*, 2024 IL App (4th) 231524, ¶ 21 ("if a petition to revoke probation alleges a violation that constitutes a criminal offense, pretrial release pending the revocation hearing is governed by" the Act); 730 ILCS 5/5-6-4(b) (West 2022) ("The court shall admit the offender to pretrial release pending the hearing unless the alleged violation is itself a criminal offense, in which case the offender shall be admitted to pretrial release on such terms as are provided" in the Act).

¶ 27   Schwedler is essentially arguing he should be released because the State did not file two verified petitions, including filing a subsequent petition for pretrial release after it filed the petition for violation of probation. But he does not provide any citation to authority or substantive argument in support of the argument that two verified petitions are required in this context. Schwedler does not argue he lacked notice that the State sought his detention at the August 9 hearing in the absence of this proposed subsequent petition, or that the contents of the petition filed here did not satisfy

the "Contents of petition" requirements of the Act. See 725 ILCS 5/110-6.1(d) (West 2022). Accordingly, we have no grounds to grant him relief on this claim.[1]

¶ 28    Schwedler next claims the State failed to make the statutorily required showings per 725 ILCS 5/110-6.1(e)(1), (2), and (3) (West 2022). He also contends the court's written order insufficiently explained its bases for each finding. See 725 ILCS 5/110-6.1(h) (West 2022).

¶ 29    First, respecting whether the proof was evident or presumption great that Schwedler committed a detainable offense, we first acknowledge that the charged offense changed from reckless conduct with great bodily harm to involuntary manslaughter from August 9 to September 17. This charging update does not change our analysis of Schwedler's claim, however, as the issue remains the same—can the proffered conduct of chasing the victim near CTA train tracks, causing the victim to fall on the tracks and be electrocuted, rise to the level of recklessness? See *People v. Eubanks*, 2019 IL 123525, ¶ 74 (involuntary manslaughter requires a mental state of recklessness). Schwedler does not meaningfully contest the State's proffer of his conduct, and only contends his conduct was negligent at worst, meaning the charge fails, citing *People v. Gosse*, 119 Ill. App. 3d 733, 738-39 (1983) (the State must prove a defendant's mental state exceeded negligence to establish recklessness, which involves the conscious disregard of risk), and *People v. Gibbs*, 119 Ill. App. 2d 222, 226-31 (1970) (a parent creating circumstances under which their child could fall down stairs by not fully closing the basement door did not constitute recklessness).

¶ 30    We find the State's proffer constituted clear and convincing evidence that Schwedler acted recklessly. Reckless conduct requires a conscious disregard of the risk of great bodily harm, and chasing an individual near CTA train tracks is generally known to encompass a significant risk of

---

[1] In so finding, we should not be understood to suggest the State should not take all steps it can to ensure clarity in future cases where it seeks pre-revocation hearing detention based on the defendant's accrual of a new criminal charge.

serious injury or death, as it creates circumstances under which an individual could fall and either be hit by a train or touch the third rail. See *People v. Cooper*, 164 Ill. App. 3d 734, 739-40 (act of kicking a victim of a CTA platform was done with knowledge that great bodily harm could result). The State's proffer also suggests Schwedler was familiar with the CTA, as he and his co-offenders allegedly harassed the victim on the train before the incident. If Schwedler intends to argue he did not know that the third rail could cause electrocution, or did not believe trains were active such that a fall posed a risk of being struck by a train, he may do so at a later date. But that is not the evidence proffered at his hearings on August 9 and September 17, and what was proffered sufficed for the court to conclude the State had met its burden by the lower, pre-trial evidentiary burden of clear and convincing evidence. See *Stock*, 2023 IL App (1st) 231753, ¶ 13 ("The State's burden at this stage is not proof beyond a reasonable doubt.").

¶ 31    Schwedler contends that there is nothing inherently dangerous about running on a CTA platform because CTA patrons often run to catch a train. We reject this argument; that there is a significant qualitative difference between (1) someone on their morning commute attempting to catch a train's door before it closes and (2) a group of individuals chasing another person to such a degree that the person falls onto the rails, is so obvious as to barely warrant mention.

¶ 32    Additionally, Schwedler's citation to *Gibbs* fails because the situations are distinct. In *Gibbs*, the court concluded defendant's conduct did not rise to recklessness because the defendant did not choose to leave the staircase accessible despite recognizing the risk to her child such conduct would engender. *Gibbs*, 119 Ill. App. 2d at 231. The proffered evidence here, conversely, demonstrates that Schwedler was conscious of the risks chasing a person near CTA train tracks could present and chose to engage in the chase anyways.

¶ 33   We also reject the argument that the circuit court failed to issue a written order that sufficiently addressed 725 ILCS 5/110-6.1(e)(1) (West 2022). In its written order of September 17, the court relayed the underlying details of the State's proffer, and the record shows Schwedler's attorney did not contest the State's account of the incident.

¶ 34   Schwedler next claims the State did not present clear and convincing evidence that he posed a real and present threat, per 725 ILCS 5/110-6.1(e)(2) (West 2022) where the State did not proffer any "aggravation" beyond the details of his charge. We disagree because the State's proffer consisted of two main aspects: (1) the underlying allegations of the new case, and (2) the fact Schwedler was on probation in two other cases when he accrued the new charges. Either factor likely would have sufficed to demonstrate by clear and convincing evidence that Schwedler posed a real and present threat to the community if released pending his revocation hearing, and in tandem, the proffer well exceeds the standard.

¶ 35   First, the conduct of engaging in a foot pursuit near CTA train tracks endangers the victim, the chasers, and the public at large, with the most serious danger being, of course, what actually happened here—someone falls on the tracks. Second, Schwedler demonstrated a willingness to ignore court orders, and the law, by engaging in illegal conduct even while on probation in two separate cases. This suggests that if released again, he could once again engage in illegal conduct, putting the public at risk. See *People v. Horne*, 2023 IL App (2d) 230382, ¶ 28.

¶ 36   Additionally, we again reject Schwedler's argument that the court's written order did not sufficiently explain its finding on this point, as the September 17 order relayed the proffered facts and referenced Schwedler's violations of probation.

¶ 37   Schwedler's final claim is that the State did not proffer sufficient facts to establish less restrictive conditions of release would not mitigate the real and present threat he posed, and the

13

circuit court again did not sufficiently explain on the record the bases for its finding on this requirement. The record shows that regarding less restrictive conditions, the circuit court made no specific comment during the August 9 hearing and wrote nothing on the subject in the August 9 order. On September 17, the court indicated both orally during the hearing and in its written order that less restrictive conditions could not mitigate because Schwedler was on probation in two matters, and his new charge occurred on CTA property.

¶ 38    Based on the above, we find the State's proffer was sufficient to demonstrate by clear and convincing evidence that no less restrictive conditions could mitigate the threat Schwedler posed. The record is clear that Schwedler engaged in the conduct underlying the 2024 case while on probation on two separate matters. This demonstrates his willingness to engage in criminal behavior despite being on court-ordered restrictions, making less restrictive conditions such as electronic monitoring or curfews ineffective to protect the community.

¶ 39    Finally, we reject Schwedler's argument that the circuit court's order was insufficient because it did not explain the reasons why it concluded less restrictive conditions could not mitigate the risk he posed. While we acknowledge the cases finding it was reversible error for a circuit court not to explain on the record the reasoning underlying its less-restrictive-conditions decision (see *People v. Castillo*, 2024 IL App (1st) 232315, ¶¶ 29-34), that body of law has been effected by the Illinois Supreme Court's holding in *Morgan*, 2025 IL 130626, ¶ 54, as it applies to proffer-only detention hearings. The issue at stake in the *Castillo* line of cases is that if the circuit court does not explain the reasons for its decision, the appellate court cannot exercise meaningful review. See *People v. Martin*, 2023 IL App (4th) 230826, ¶¶ 23-26. The concern for meaningful review is attenuated when, as here, the appellate court reviews both the circuit court's factual

findings and its ultimate detention decision *de novo* following a proffer-only hearing. *Morgan*, 2025 IL 130626, ¶ 54.

¶ 40    We remind the circuit court that section 110-6.1(h)(1) of the Act requires the court to "make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat." 725 ILCS 5/110-6.1(h)(1) (West 2022). In light of *Morgan*, however, we find that the deficiency in the circuit court's written order does not constitute grounds for reversal in the case here because the State proffered sufficient facts for this court to conclude that detention was appropriate pursuant to the Act.

¶ 41                                    CONCLUSION

¶ 42    For the foregoing reasons, the circuit court's order is affirmed.

¶ 43    Affirmed