THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT DUGAN, SR., Defendant-Appellant.
Second District  No. 2—92—0126

Opinion filed December 4, 1992.

690

Carol J. Lazzaro, of Lazzaro & Lazzaro, P.C., of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Robert Dugan, Sr., defendant, was charged by information with five counts of aggravated criminal sexual abuse. (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)(i).) Thereafter, the grand jury returned a true bill on a seven-count indictment. Following a bench trial, defendant was convicted of six counts of aggravated criminal sexual abuse and was sentenced to a term of seven years' imprisonment. Defendant appeals both his conviction and sentence. For the following reasons, we affirm.

The victims in this case are B.B. and J.B., who were 11 and 12 years old at the time of trial, respectively. For three years prior to the time of the alleged offenses, defendant had been involved in a relationship with the mother of the children, Laura B.

Rodney B., the father of the children, and his wife, Robyn B., live in Florida. In a telephone conversation that took place on January 23, 1991, J.B. told Robyn B. of a film on sexual abuse that she saw in health class. J.B. related to Robyn B. that defendant touched her breasts. In a telephone conversation later that day, J.B. informed Rodney B. that defendant touched her breasts on various occasions while she was lying on the couch with him. In a subsequent conversation, J.B. told Rodney B. of her bed-wetting problem and that defend-

ant would check if she was wet by slipping his hand inside her underpants.

When Rodney B. questioned B.B. on January 23, 1991, she denied that any improper touches occurred. However, in a conversation on March 16, 1991, B.B. informed Rodney B. of an incident in December 1990 where defendant placed his penis between her legs and "started bouncing like when you're trying to hold it when you have to go to the bathroom."

The trial began on December 5, 1991. J.B. testified that she was 12 years old. J.B. reiterated that defendant touched her breasts under her bra and moved his hand in a circular motion on several occasions while she and defendant were lying on the couch watching television. J.B. also related that defendant sometimes checked if she wet her bed by touching her vaginal area inside of her underpants. Although J.B. thought these were bad touches, she was unsure until she viewed a film on sexual abuse at school. The activities to which J.B. testified constituted four counts of the indictment.

B.B. testified that she was 11 years old. B.B. stated that on several occasions while she was lying on the couch, defendant would rub her breasts. B.B. recalled that, in the early morning hours in December 1990, defendant went into her bedroom, woke her, and asked if she would like to watch a movie on television. Defendant took her to the living room couch, tuned in the Playboy channel, and removed his underwear. After defendant told B.B. to remove her underpants and get on top of him, he placed his penis between her legs and began "jumping," or gyrating his hips. After a few minutes passed, defendant sat up and began to rub his penis. B.B. ran back to her bedroom and got into bed. Defendant followed her and "rub[bed] all over [her]." B.B. stated that she did not inform anyone of this incident because she saw movies with bad people on television and was afraid that defendant would kill her if she told. The activities to which B.B. testified constituted three counts of the indictment.

Defendant first contends that he was denied the right to fully confront the witnesses against him, particularly the children. During an interview with Timothy Rossi of the Department of Children & Family Services (DCFS) pursuant to a neglect petition filed against Laura B. in juvenile court, B.B. expressed the desire to live with her father in Florida. Following the trial, the defense became aware of B.B.'s statements to Rossi. Defendant contends that the State was obligated to disclose this information and the failure to do so foreclosed the opportunity to effectively cross-examine the children at trial.

In *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97, the Supreme Court held that the prosecution's suppression of evidence favorable to an accused, upon request, violates due process where the evidence is material either to defendant's guilt or to punishment. The *Brady* standard has been adopted by Illinois courts. (*People v. Hoffman* (1965), 32 Ill. 2d 96, 99-100.) Additionally, Supreme Court Rule 412 (134 Ill. 2d R. 412) specifically provides for pretrial disclosure of relevant information to the accused. Paragraph (c) is essentially a codification of *Brady v. Maryland* and requires the State to disclose to defense counsel "any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." (134 Ill. 2d R. 412(c).) Paragraph (g) of the rule delineates the scope of the State's disclosure responsibilities as follows:

"Upon defense counsel's request and designation of material or information which would be discoverable if in the possession or control of the State, and which is in the possession or control of other governmental personnel, the State shall use diligent good-faith efforts to cause such material to be made available to defense counsel; and if the State's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel." 134 Ill. 2d R. 412(g).

Violations of the discovery requirements of Rule 412 are governed by the same standard as Federal due process claims under *Brady*. (*People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 255.) Under this standard, a new trial is not warranted unless the information that was requested but undisclosed was "material." In *United States v. Agurs*, the Supreme Court stated that "implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." (*United States v. Agurs* (1976), 427 U.S. 97, 104, 49 L. Ed. 2d 342, 350, 96 S. Ct. 2392, 2398.) Regardless of whether the defense has made a general or specific request for the undisclosed information, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (*United States v. Bagley* (1985), 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383.) The defendant bears the burden of proving there was a reasonable probability that timely

disclosure of the requested material to the defense would have affected the verdict. (*Bagley*, 473 U.S. at 683, 87 L. Ed. at 494, 105 S. Ct. at 3384; *Agurs*, 427 U.S. at 112, 49 L. Ed. 2d at 355, 96 S. Ct. at 2402.) When applying the materiality standard, the State's omission must be evaluated in the context of the entire record, and the reviewing court may consider any adverse effect the nondisclosure may have had on defendant's case. *Gutirrez*, 205 Ill. App. 3d at 254.

■■ Defendant contends that the information concerning B.B.'s express desire to live with her father was the type of *Brady* information the State was required to disclose to him, and the failure to do so violated the discovery rules quoted above. Defendant was fully aware of the case pending against Laura B. in juvenile court. As the sentencing judge indicated, defendant could have moved for discovery of the file containing B.B.'s statements to DCFS prior to trial. Nothing in defendant's boiler-plate discovery request indicates that he sought the information he now claims was wrongfully withheld. The committee comments to Supreme Court Rule 412 emphasize the role of the State regarding discovery:

> "[T]he burden is upon defense counsel to make the request and to designate the material or information which he wishes to inspect. This paragraph avoids placing the burden on the prosecutor, in the first instance, of canvassing all governmental agencies which might conceivably possess information relevant to the defendant." (134 Ill. 2d R. 412, Committee Comments, at 350.)

Defendant's position on appeal places the burden to produce information on the prosecution, which is exactly what Rule 412 seeks to avoid.

Furthermore, defendant magnifies the importance of the alleged discovery violation. One line of the report states that B.B. missed her father and friends in Florida and wanted to return. Because the trial court found the credibility of the witnesses an important issue in this case, defendant contends the undisclosed information is "material" under *Brady* because it indicates a motive to fabricate.

In rendering its ruling, the court stated as follows:

> "[The children] indicated they had no desire to be removed from the custody of their mother. They had no desire to leave this area to live physically. They had no desire to move to the state of Florida presumably to live with their natural father and what would be their stepmother. So I cannot conceive of their motivation for fabricating the story that they have testified to here today."

However, we do not believe that disclosure of the DCFS report contained in the juvenile court file would have affected the judgment in this case. The trial judge stated that he found the children's testimony "highly compelling, highly believable, highly credible," and was satisfied that six counts of the indictment were "proven by more than beyond a reasonable doubt." Although defendant contends that the nondisclosure inhibited his opportunity to cross-examine the children concerning their motive to fabricate, the record reveals the following interchange on J.B.'s cross-examination:

"Q. Would I also be correct, [J.B.], that you were somewhat jealous of Bobby [defendant] and the time your mother spent with him?

A. Yes.

Q. And you in fact were unhappy about your mother spending as much time with Bobby and little time with you, is that right?

A. Yes.

Q. And you called your father numerous times and told him about that?

A. Yes."

The record also reveals that the defense repeatedly questioned B.B. on cross-examination concerning the reason she did not tell anyone of the incident where defendant allegedly placed his penis between her legs.

In entering his ruling, the trial judge stated that the children's testimony that they loved defendant and believed he was a kind man "reinforces or indicates to me that [the children] would not make this up to harm someone that they loved or that they otherwise care for. It simply seems preposterous that they would do that." Given that both girls were cross-examined concerning their motive to fabricate and the trial judge still found their testimony highly credible, we find that the information was not *Brady* material because there was no showing of a reasonable probability that the disclosure of the information contained in the DCFS reports would have changed the judgment of the court.

Section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10) provides an exception to the hearsay rule in a prosecution for a sexual act perpetrated upon a child under age 13. The rule allows testimony of out-of-court statements describing the child's complaint of the sexual acts to another (Ill. Rev. Stat. 1989, ch. 38, pars. 115—10(a)(1), (a)(2)) to be admitted as evidence if the court finds after a hearing *in camera* "that the time, con-

tent, and circumstances of the statement provide sufficient safeguards of reliability" (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(b)(1)) and the child either testifies at the proceeding or there is corroborative evidence of the act when the child is unavailable as a witness (Ill. Rev. Stat. 1989, ch. 38, pars. 115—10(b)(2)(A), (b)(2)(B)). The rule also provides that "[t]he proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement." (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(d); see also *People v. Denning* (1991), 219 Ill. App. 3d 428, 433.) The disclosure provisions of section 115—10(d) are designed to protect the defendant against surprise, unfairness, and inadequate preparation. However, when there has been no such prejudice, the admission of evidence is not reversible error even where the State has committed a discovery violation. *Denning*, 219 Ill. App. 3d at 432.

The State's section 115—10 witnesses were Robyn B., Rodney B., and Douglas Schultze, principal of the children's school. Each witness proffered testimony concerning statements made by the children concerning improper touches made by defendant. Defendant contends that the court abused its discretion by allowing the witnesses to introduce section 115—10 testimony without first requiring the State to disclose the particularities of their proposed testimony. In defendant's words, this failure "created a trial by ambush consisting of evidence which the defense had no opportunity to investigate or to cross examine [*sic*], or to defend."

The record in this case reveals that defendant requested discovery of the names and addresses of the State's witnesses and their written or oral statements. The State responded to defendant's request by disclosing the names and addresses of their proposed witnesses and attaching reports containing written recorded statements or verbatim reports of the proposed witnesses to the extent that they existed. Although Robyn B. testified at trial, her name was not on this list. Accordingly, defendant objected to Robyn B.'s section 115—10 testimony as undisclosed. However, the objection was overruled, since the defense failed to object at the time the section 115—10 testimony was introduced. Similarly, defense counsel made the following hearsay objection in response to Rodney B.'s testimony concerning conversations during which the girls related incidents of improper behavior by defendant:

> "MR. LAZZARO [defense counsel]: The girls haven't testified as to any of this. I think in fact they are testifying. I don't know if counsel is going to make an offer of proof that they are going to testify. I realize the Court, instead of calling these out

of order, that they are going to testify and they are going to testify to the substance of this, fine.

THE COURT: At this juncture I'll overrule it. You may renew the objection in the event those witnesses don't testify, but at this point, as you correctly stated, I was apprised that they're witnesses who are here from some distance and I presume some witnesses are going to be presented on a normal, chronological or sequential order. So at this point I'm [going to] overrule the objection. ***

MR. LAZZARO: Just so I don't continue interrupting, your Honor, I will have a continuing objection to any hearsay, understanding that it is being admitted subject to being stricken if the girls do not testify to this themselves.

THE COURT: Provided you renew the objection at the close of the State's case assuming the witnesses don't testify.

MR. LAZZARO: Show it's a continuing objection.

THE COURT: I appreciate it and it will be noted and has been noted for the record.''

The court reiterated the above ruling after defense counsel objected to Douglas Schultze's section 115—10 testimony on the same basis. However, these objections subsequently became moot since the children did testify at trial.

■ In spite of the lengthy discussion concerning defense counsel's objections to the witnesses' section 115—10 testimony, the record fails to indicate that any objection concerning section 115—10 *disclosure* was raised. The record also indicates that defendant failed to raise this objection in a post-trial motion. Defendant might have endured some prejudice if the State failed to disclose the particularities of its section 115—10 testimony prior to trial. However, the trial court must be afforded the opportunity to correct any errors by tendering an objection during trial and renewing the objection in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-87.) Since the record fails to indicate that defendant preserved this issue for review by making the proper objections, we deem the issue waived. (See *People v. Pinta* (1991), 210 Ill. App. 3d 1071, 1076.) We further decline to address this issue under the plain error doctrine (134 Ill. 2d R. 615(a)) since the children themselves testified about the events related by the State's section 115—10 witnesses and the defense failed to argue that it was surprised or prejudiced by such testimony.

Next, defendant contends that the court abused its discretion by allowing the testimony of the State's section 115—10 witnesses to be admitted without making reliability findings. Under section 115—10,

hearsay statements made by the victim regarding the sexual acts may only be admitted if, after a hearing *in camera,* the court finds that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(b)(1).) In *People v. Coleman* (1990), 205 Ill. App. 3d 567, the court reviewed section 115—10 in light of *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139, and determined that the admission of hearsay evidence under section 115—10 did not violate the confrontation clause if the State was able to show that (1) the witness was unavailable, and (2) the witness' statement bears adequate "indicia of reliability." (*Coleman,* 205 Ill. App. 3d at 581.) The *Coleman* court determined that the reliability finding provided by section 115—10 "must be understood to be of a comparable nature with a finding that the circumstances of the statement render the declarant 'particularly worthy of belief' and, in reaching this decision, the court must consider only those circumstances which surround the making of the statement." *Coleman,* 205 Ill. App. 3d at 584.

In *People v. Kargol* (1991), 219 Ill. App. 3d 66, 72-73, the Appellate Court, Fourth District, determined that the burden to request a hearing and reliability findings is on the proponent of the hearsay testimony or on the State. As such, the court held that the defendant did not waive the issue by failing to request a hearing. We note, however, that the defendant in *Kargol* was convicted by a jury. (See also *People v. Smith* (1991), 221 Ill. App. 3d 605 (jury conviction reversed and cause remanded for a new trial because the State did not seek a pretrial section 115—10 hearing for reliability findings before introducing hearsay testimony).) In *People v. Roy* (1990), 201 Ill. App. 3d 166, 182, a bench trial, defendant failed to object to the trial court's failure to conduct a hearing and enter reliability findings. On review, the court found section 115—10's requirement that the hearing be held "outside the presence of the jury" did not render it inapplicable to bench trials. (*Roy,* 201 Ill. App. 3d at 183.) However, the *Roy* court further found that the trial court's failure to articulate reliability findings did not amount to plain error as "the trial court, as a trier of fact, is presumed to have only considered admissible evidence." (*Roy,* 201 Ill. App. 3d at 183; see also *People v. West* (1992), 234 Ill. App. 3d 578, 590.) Similarly, in *People v. C.H.* (1992), 237 Ill. App. 3d 462, 471), also a bench trial, the trial court did not conduct a separate reliability hearing, but stated that it would rule on the admissibility of the hearsay statements after it heard the testimony. Since defendant did not object to this procedure during trial, the court in *C.H.* deemed the issue waived. Given the trial court's remarks concerning the ad-

missibility of the testimony and the presumption that the trial court considers only admissible evidence in a bench trial, the procedure did not amount to plain error.

These cases reveal an obvious distinction between plain error in a bench trial and a jury trial. The plain error rule applies only when the evidence is closely balanced or the alleged error so prejudicial that the defendant was deprived of a fair trial. (*People v. Hayes* (1990), 139 Ill. 2d 89, 143.) In a bench trial, it is presumed that the court considers only admissible evidence. However, without specific evidence that the trial court placed undue emphasis on unreliable evidence, the reviewing court is unable to determine that the alleged error or omission was so prejudicial that it deprived the defendant of a fair trial.

■ In this case, no reliability hearing was held prior to trial and, as noted by the trial court, defendant did not request a hearing or object to its absence either during trial or by post-trial motion. As each of the State's section 115—10 witnesses testified, the defense failed to object on the basis that their testimony was not previously found to have the requisite "indicia of reliability." Therefore, we deem the issue waived on review. *Enoch*, 122 Ill. 2d at 186-87.

We further find that this omission did not amount to *plain* error. As in *C.H.*, the trial court made findings concerning the section 115—10 hearsay testimony after it was introduced. The court stated "with respect to the findings, had this been a jury trial, that the Court would have been required to make outside the presence of the jury under 115—10 ***, in fact I would find that they have been complied with." Furthermore, the children's testimony corroborated the hearsay statements introduced under section 115—10. For these reasons, we find that the trial judge considered the time, content, and circumstances during which the children's statements were made to the witnesses who testified about the conversations. Although we do not condone the procedure of entering reliability findings after the witness has testified, any error which may have occurred was harmless.

Next, defendant contends that the State failed to prove him guilty beyond a reasonable doubt. Defendant notes that B.B. initially denied that defendant touched her improperly and that both girls testified that their mother or sister may have been in the same room when defendant touched their breasts. Defendant asserts that the evidence against him, namely, the section 115—10 hearsay statements and testimony of the victims, was inconsistent and improbable. He also contends that there was no evidence that he committed any of the offenses in question for the purpose of sexual arousal. Therefore,

defendant asserts that the evidence was insufficient to prove him guilty beyond a reasonable doubt.

In *People v. Schott* (1991), 145 Ill. 2d 188, 203, our supreme court rejected its prior standard and held that a criminal conviction in a sex offense case will not be overturned on review unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. The proper test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Schott*, 145 Ill. 2d at 203.) It is the function of the trier of fact to weigh the credibility of the witnesses and resolve conflicts or inconsistencies in their testimony. A reviewing court will not substitute its judgment for that of the trier of fact who heard the evidence and had the opportunity to observe the demeanor of the witnesses unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of defendant's guilt. *People v. Kelchner* (1991), 221 Ill. App. 3d 25, 30.

In this case, the State introduced photographs of the children in poses where they were hugging defendant. Some of the photographs depicted defendant and one of the girls lying intertwined on the couch while dressed only in their underwear. These photographs demonstrated the type of behavior that was typical in the home. The girls' mother, Laura B., found nothing wrong with the activities depicted in the photographs and admitted that she did not pay much attention to the actions of defendant and the girls while they were lying on the couch. The trial court viewed the photographs as a benchmark of the normal environment of the home. Consequently, the court did not find it unusual that the girls were unsure that these actions were improper until viewing a film on sexual abuse at school. Furthermore, the girls testified that they liked defendant and that he also gave them "good" touches.

In his brief, defendant compares the instant case with *People v. Findlay* (1988), 177 Ill. App. 3d 903, and *People v. Falk* (1970), 121 Ill. App. 2d 1, where convictions of sexual abuse were reversed because of insufficient evidence. In both cases, the alleged sexual abuse occurred where other persons were in close vicinity. However, the appellate court applied the prior standard of review which upheld a conviction only where the complainant's testimony was clear and convincing or substantially corroborated by other evidence. Assuming *arguendo* these cases have any vitality after *People v. Schott*, the factual scenario in this case is quite different, as Laura B.'s testimony

indicates that it is unlikely she would have recognized or disapproved of defendant's improper behavior.

The thrust of defendant's evidence consisted of denying any improper contact with the victims for the purpose of sexual arousal. In response to his claim that he would rub the girls' breasts only while applying Vicks Vapo-Rub when they were ill, the court commented that "if the defendant applied Vicks, whether I look at it as a medicinal application or not, in the frequency that he testified, they would be buying that in 55-gallon drums." The trial court stated that the credibility of the witnesses was an important issue and found the girls' testimony "highly compelling, highly believable, highly credible." The comment regarding the Vicks illustrates that the court did not have a high regard for defendant's testimony. Further, the trial court carefully considered all the evidence, as demonstrated by the directed finding entered in favor of defendant on the count of the indictment alleging that defendant touched the vagina of J.B. for the purpose of sexual arousal.

A defendant's intent may be established by circumstantial evidence and may be inferred from defendant's conduct. (*Kelchner*, 221 Ill. App. 3d at 31.) An incident where a man places his penis between the legs of a child, begins to "bounce" or gyrate his hips, and masturbates in front of the child clearly demonstrates the intent of sexual arousal. Rather than inferring that defendant merely brushed up against their breasts, the girls testified that defendant touched them in a "circular motion" under their clothes and bra. Based on the evidence presented, we find that any rational trier of fact could have found that defendant possessed the intent to arouse his sexual desires and that he was guilty of the counts of the indictment of which he was convicted.

Finally, defendant contends that the court abused its discretion by imposing a sentence of seven years' imprisonment. A trial judge is given broad discretion in determining the length and type of sentence. (*People v. Black* (1992), 223 Ill. App. 3d 630, 633.) A reviewing court will not substitute its judgment for that of the trial court because it might have given a different sentence by balancing the aggravating and mitigating factors differently. (*People v. Carlson* (1992), 224 Ill. App. 3d 1034, 1044.) Rather, the trial court may exercise wide discretion in the source and type of evidence it uses in determining the appropriate sentence. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 496.) Thus, a sentence will not be reduced or vacated as excessive unless the sentencing judge abused his discretion by imposing a sentence

that is manifestly unjust or palpably erroneous. *People v. Wilson* (1991), 143 Ill. 2d 236, 250; *Kelchner*, 221 Ill. App. 3d at 32.

Defendant asserts that he treated the victims like a father and that his contact with them resulted in no physical harm. We note that any sexual abuse, regardless of its extent, causes harm to the victims. The therapist's analysis and victim impact statements indicate that both girls experienced emotional difficulties, exhibited by frequent crying, rage, nightmares, and feelings of guilt. However, the record indicates that the court did not consider the victim impact statements in imposing the sentence. After reviewing the presentence report and the statutory factors in aggravation and mitigation, the court found that defendant was not an appropriate candidate for probation. This decision was based mainly on defendant's evaluation which indicated a wide range of abusive behaviors which are chronic and highly ingrained for which defendant exhibits little guilt or remorse. The court also commented on defendant's status as a "surrogate father or perhaps husband" to Laura B. and the girls and that he abused their trust in this relationship. On this basis, the court considered defendant a dangerous individual.

We note that aggravated criminal sexual abuse is a Class 2 felony (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(g)), which carries a sentence of three to seven years' imprisonment (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(5)). We conclude that defendant has not demonstrated an abuse of discretion in the imposition of a seven-year sentence.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

INGLIS, P.J., and BOWMAN, J., concur.