No. 2--97--0168

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court 

OF ILLINOIS, ) Du Page County

)

Plaintiff-Appellee, )

) No. 94--CF--1888

v. )

)

ARTHUR SOTERAS, ) Honorable

) Ronald B. Mehling

Defendant-Appellant. ) Judge, Presiding. 

______________________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Arthur Soteras, appeals his conviction of first-degree murder (720 ILCS 5/9--1(a) (West 1994)) of decedent, Cozette Jones, for forcing her vehicle off the road and into a rollover accident.  We affirm.

Jones and her brother, Albert Weems, both worked at a restaurant in Elgin.  Defendant owned a flower shop in partnership with Don Chiola.

During the afternoon of September 7, 1994, Jones and Weems were driving to work in Jones’s Geo Tracker on the Eisenhower Expressway, when a Firebird driven by defendant cut in front of them.  Jones honked her horn at defendant and defendant slammed on his brakes.  The two cars eventually stopped on the shoulder of the expressway.  Weems approached the Firebird with a part of “the Club,” an anti-theft device, hidden behind his back.  Jones also approached defendant’s car and may have been armed with the other portion of “the Club.”  Weems exchanged words with defendant and Nick Chiola, who was a passenger in the Firebird.  Defendant sprayed mace at Weems and Jones and, according to Weems, hit Jones in the face with the mist.  Weems struck the Firebird’s rear spoiler with his portion of “the Club.”  The Firebird drove away along the shoulder of the road.  Weems, now driving the Tracker, tried to give chase, but soon lost the Firebird in traffic.

The Firebird exited the expressway and stopped for gas.  Nick Chiola testified that when defendant noticed the damage caused by Weems’s blow to the rear spoiler, they both became upset.  Defendant and Nick Chiola got back into the car and reentered the Eisenhower expressway.

Weems and Jones in the meantime continued traveling along the Eisenhower Expressway.  Shortly before the Mill Road exit, Weems noticed the Firebird in his rearview mirror and observed that it was “coming up fast in and out of traffic, just coming up fast.”  Weems testified that he maintained his speed and position in the center lane while the Firebird pulled alongside him in the right lane and began to crowd him by crossing into his lane.

Weems testified that defendant began to spray mace at the Tracker.  Jones screamed for defendant to stop and began to roll up her window because she was inhaling the fumes.  Weems maintained his speed of between 65 and 70 miles per hour while the Firebird continued to crowd him.  Weems moved to the left lane and was immediately followed by the Firebird.  The Firebird continued to crowd Weems, and Jones suggested that they exit at Lake Street in order to go to the police station there.

Weems moved from the left lane to the right lane.  As he made this maneuver, he testified that he had lost sight of the Firebird.  Weems also testified that, while he did not use his turn signal to change lanes, he did look behind him while he crossed the lanes.  As he crossed the lanes, he felt a bump, then a hard bump and a constant push until he lost control of the car and it tumbled down the embankment by the side of the road.

Nick Chiola testified that, after both cars pulled onto the shoulder of the Eisenhower expressway,  Weems and Jones came up quickly and started to hit the Firebird with clubs.  Defendant sprayed mace at them and then drove away along the shoulder.  Defendant and Chiola eluded the Tracker, left the expressway, and pulled into a gas station.  After getting gas and observing the damage, they returned to the Eisenhower expressway.

As they were driving, defendant noticed the Tracker in the center lane and began weaving in and out of traffic in order to catch up to it.  The Tracker moved to the left lane and the Firebird pulled alongside.  Nick Chiola testified that he saw defendant stick his arm out of the window and indicate that the Tracker should pull over because defendant wanted to talk to Weems and Jones about the damage they had caused.  In response, Weems and Jones were making hand gestures and swearing at them.  Nick Chiola testified that both cars were swerving into each other’s lanes and were a few feet apart.  Nick Chiola testified that an object was thrown at the Firebird, possibly a can, and that he noticed Jones was holding a “silvery object.”  In response, defendant sprayed mace at the Tracker.

Nick Chiola testified that, after spraying the mace, defendant then moved to the right lane, maintaining a constant speed of between 65 and 70 miles per hour.  The Tracker remained in the left lane.  Nick Chiola testified that the Tracker then moved into the right lane about three to five feet in front of the Firebird and applied its brakes.  Defendant did not brake to avoid the Tracker, but veered left, making a slight contact with the Tracker.  Nick Chiola testified that he saw the Tracker go down the embankment.  Defendant did not pull off the road but sped away, attempting to avoid a pursuing tow truck.

The Firebird exited the expressway on Thorndale Road, with the tow truck still in pursuit.   After running a red light in an attempt to evade the tow truck, defendant was stopped in a motel parking lot by Cook County Sheriff’s Deputy Farahat Levy.

Deputy Levy testified that he observed the Firebird run a red light.  After stopping defendant, Levy testified that defendant explained that he was late for a golf outing.  Levy further testified that a cursory check of the Firebird did not reveal any golf clubs.  A later inventory check of the Firebird also failed to uncover any golf clubs.

The eyewitnesses to the rollover, Kelly Pysarenko, John Bratcher, Steven Kraft, and Lorenzo Guzman, all testified that, as they were traveling on the expressway on September 7, 1994, each noticed a Firebird speeding and weaving in and out of traffic until it caught up with a Geo Tracker.  Each testified that the Firebird swerved toward the Tracker and crossed into the Tracker’s lane.  Each testified that they saw hands from the Firebird gesturing or throwing things at the Tracker.  All but Pysarenko testified that they saw the Firebird accelerate and strike the rear of the Tracker and maintain contact until the Tracker left the road.  Pysarenko testified that her view was obscured by other vehicles until she saw the Tracker rolling down the embankment by the side of the expressway.

The State presented the testimony of an accident reconstruction expert, Trooper Scott Thompson.  Thompson testified that, in his opinion, the Firebird struck the rear of the Tracker, possibly several times, and that the Firebird may have underridden the Tracker and lifted up its rear end.  Thompson further testified that, in his opinion, the collision caused the Tracker to begin to spin in a clockwise direction, that Weems’s attempts to turn right exacerbated the spin, and that the car flipped over when the tires dug into the ground.  In forming his opinion, Thompson relied upon police reports and witness statements, field sketches and photographs, his own measurements and those performed by an evidence technician, Illinois Department of Transportation survey information, and the report of a certified auto mechanic.

Defendant’s accident reconstruction expert, Fred Monick, testified that, in his opinion, the Tracker and Firebird came into contact on only one occasion for less than a second and that the contact was very light.  Monick testified that he observed no structural damage to the bumpers of the two cars and estimated that the difference in the relative speed of the two cars was no more than five miles per hour.  Monick further testified that he believed that the contact was insufficient to send the Tracker into a spin.  Monick testified that he based his opinions on his personal examination of the vehicles, pictures of the vehicles, the damage to the vehicles, and the vehicle manufacturers' collision damage testing on their bumpers.

The trial court found defendant guilty of first-degree murder (count V) (720 ILCS 5/9--1(a)(2) (West 1994)).  In delivering its findings, the trial court emphasized the importance of the eyewitness testimony and placed little emphasis on the expert testimony.  Defendant filed a motion in arrest of judgment attacking the indictment and a motion for a new trial, both of which were denied.  The court sentenced defendant to a 45-year term of imprisonment.  Defendant timely appeals.

On appeal, defendant contends that (1) the indictment did not properly allege intent for murder; (2) defendant was prejudiced by the revelation of prior felony convictions during the jury waiver hearing; (3) the evidence was insufficient to prove him guilty of first-degree murder; (4) trial counsel was ineffective for failing to object to “incompetent evidence”; (5) defendant was prejudiced by the State’s examination of Antonio Ascenscio; (6) the trial court misconstrued the evidence and law in its findings of fact; and (7) the State’s expert testimony usurped the fact finder’s role.

1.  INDICTMENT

Defendant initially argues that the indictment was defective for failure to adequately set forth the requisite intent for murder. Count V of the indictment states that “defendant, without lawful justification, drove a motor vehicle into a motor vehicle occupied by Cozette D. Jones and Albert L. Weems, knowing such act created a strong probability of great bodily harm to [the victims], thereby causing the death of Cozette D. Jones.”  Defendant contends that count V of the indictment sets forth a charge more akin to aggravated battery than murder.  Compare 725 ILCS 5/9--1(a)(2) (West 1994) (person “commits first degree murder if, in performing the acts which cause the death: *** he knows that such acts create a strong probability of death or great bodily harm to [the victim]”) with 725 ILCS 5/12--4(a) (West 1994) (“A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery”).  Defendant argues that the indictment is insufficient for failing to track the murder statute (725 ILCS 5/9--1(a)(2) (West 1994)).  We disagree.

When a defendant challenges the sufficiency of the charging instrument by a motion in arrest of judgment, it is well settled that the instrument is sufficient if it “apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.”  725 ILCS 5/116--2(c) (West 1996); see also  
People v. Benitez
, 169 Ill. 2d 245, 258 (1996); 
People v. Scott
, 285 Ill. App. 3d 95, 98 (1996).  Count V, challenged for the first time by a motion in arrest of judgment, meets the statutory requirements.  Count V states that defendant was charged with first-degree murder and precisely lists the section of the Criminal Code of 1961 (720 ILCS 5/9--1(a)(2) (West 1994)).  Moreover, the precise act with which defendant was charged, namely, driving his vehicle into the victims’ vehicle, is also given in count V.  Accordingly, we hold that count V adequately charged the offense of first-degree murder (720 ILCS 5/9--1(a)(2) (West 1994)).

We note that even under the more stringent standard of review pertaining to a pretrial motion to dismiss the indictment (see 725 ILCS 5/114--1 (West 1996); 
Scott
, 285 Ill. App. 3d at 99), the indictment passes muster.  It is “the well-established rule in Illinois that, in testing the sufficiency of a multicount indictment, elements missing from one count may be supplied by another count.”  
People v. Johnson
, 231 Ill. App. 3d 412, 423 (1992).  Here, count I supplies the missing element, stating that  defendant “drove a motor vehicle into a motor vehicle occupied by Cozette D. Jones and Albert L. Weems, knowing such act created a strong probability of death to [the victims], thereby causing the death of Cozette D. Jones.”  Thus, read together, counts I and V provide that defendant acted with the knowledge that his action created a strong probability of great bodily harm or death, which tracks the first-degree murder statute (720 ILCS 5/9--1(a)(2) (West 1994)).  Additionally, both counts contain the name of the offense and the statutory provision alleged to have been violated.  Accordingly, the indictment would be sufficient even under the more stringent standard of review applicable to a pretrial challenge.

Defendant also argues that the indictment failed to allege a specific intent for the crime of murder, relying upon 
People v. Muir
, 67 Ill. 2d 86 (1977), and 
People v. Gilday
, 351 Ill. 11 (1932).  Murder, however, is a general intent crime.  
People v. Thomas
, 266 Ill. App. 3d 914, 926 (1994); see also 
Muir
, 67 Ill. 2d at 93 (“Section 9--1(1)(a)(2) *** encompasses situations where subjective intent to kill may be lacking, but where the defendant intentionally, and with disregard to the consequences, performs acts of obvious danger to another’s life”).  Additionally, 
Muir
 and 
Gilday
 are inapposite to this case because they involved attempted murder charges.

2.  PRIOR CRIMINAL HISTORY

Defendant next contends that he was prejudiced by the State’s introduction of his criminal background during the jury waiver hearing.  At the hearing, conducted the day before the bench trial began, the following exchange occurred:

“[Trial court]: Should there be a finding of guilty, either by a jury or by a judge, the most serious offense you are charged with is first degree murder which can carry -- what is the maximum?

[State]: Natural life.  I don’t think the death penalty is available.  That would be with intent to kill.

The worse [
sic
] penalty would be, potentially, natural life, 20 to 60.

[Trial court]: Normally 20 to 60 years.  Minimum 20.  Maximum 60.

However, under certain circumstances where [
sic
] certain specific findings, you could receive the possibility of a sentence up to natural life.  Do you understand that?

[Defendant]: Yes, your Honor.

[State]: Judge, the only other thing that concerns me, he has a prior background and I don’t know if that would make it extended term eligible depending on what possible counts he would be.

[Trial court]: I, of course, don’t know anything about his background, what the situation is there.

I can only speak from the standpoint of, that the most serious charge is first degree murder.

The State indicated the maximum penalty possibly obtained in this case would be natural life and obviously go from anywhere from that all the way down to, I suppose, with the other charges, all the way down to probation with no jail time.

There is a whole chain of penalties.  I want to make you aware that these are very serious charges and you have a right to a jury trial and no guarantees.  Do you understand?

[Defendant]: Yes, sir.”

Defendant contends that the State offered defendant’s criminal background at the waiver hearing solely for the purpose of establishing defendant’s propensity to commit crime.  According to defendant, the foregoing exchange amounted to reversible error.  We disagree.

When conducting a bench trial, the court is presumed to consider only admissible evidence.  
People v. Dugan
, 237 Ill. App. 3d 688, 698 (1992).  Here, there is no question that the State’s comment was not evidence; the trial had yet to begin.  While not required, the trial court was within its discretion to admonish defendant about the consequences of his jury waiver, including the possible sentencing range.  See 
People v. Stokes
, 281 Ill. App. 3d 972, 977 (1996).  The prosecutor’s statement was given in response to the trial court’s inquiry concerning the maximum sentence.  Moreover, in rendering its decision, the trial court gave a detailed recapitulation of the evidence it considered.  There is nothing in the record to indicate that the trial court improperly considered the information that defendant may have been eligible for an extended term of imprisonment.  Accordingly, we hold that the State’s comment about defendant’s potential eligibility for an extended term of imprisonment did not constitute error.

Defendant attempts to support his proposition that the introduction of a defendant’s criminal history to the finder of fact is reversible error by analyzing a number of cases in which the information was introduced during trial.  These cases are distinguishable, however, because in each of them the defendant’s actual criminal history was introduced into evidence.  Here, by contrast, defendant’s actual criminal history was not introduced into evidence.  The State merely suggested the possibility that defendant could be eligible for an extended sentence.  Moreover, the well-established rule in Illinois is that, while evidence of prior crimes or bad acts is inadmissible to establish a defendant’s propensity to commit crime, such evidence may be admissible for any other purpose.  
People v. Oaks
, 169 Ill. 2d 409, 454 (1996); 
People v. Baptist
, 76 Ill. 2d 19, 27 (1979).

Defendant also argues that he received ineffective assistance from his trial counsel because trial counsel failed to object to the prosecutor’s remark, file a motion for substitution of judge, or otherwise ameliorate the effect of the prosecutor’s statement.  As we have found that the remark did not constitute error, trial counsel was not ineffective for failing to act upon it.

At this time, we address defendant’s motion to correct his brief, which we ordered taken with the case.  We grant defendant’s motion to correct his brief by adding a citation for a quotation which was erroneously attributed to another case, noting that we have disregarded argument pertaining to this case included in defendant’s motion.  The dropped citation in defendant’s opening brief also prompted the State to accuse defendant of manufacturing quotations and authority and to ask that we strike defendant’s argument regarding the prosecutor’s remark.  We note that the State’s request to strike defendant’s argument is not properly before us, as it was made in its response brief and not in a motion.  Accordingly, we deny the State’s request.  Additionally, we have examined the substance of the State’s contentions and find no merit in them.

3.  SUFFICIENCY OF EVIDENCE

Defendant next contends that the State failed to prove him guilty beyond a reasonable doubt.  When evaluating a challenge to the sufficiency of the evidence, the reviewing court is to determine, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).

Defendant first contends that the four neutral eyewitnesses were, “in the main, greatly impeached.”  Impeachment, however, generally refers to a witness’s prior inconsistent statements, contradiction of facts, and evidence of bias and character.   Black’s Law Dictionary 753 (6
th
 ed. 1990).  Defendant primarily highlights variations between each of the neutral witnesses’ version of the events and that of Nick Chiola to argue that the eyewitnesses’ testimonies were unworthy of belief.  Such differences between the witnesses’ account, however, are not unexpected.  It would be surprising indeed if the four accounts were in perfect agreement on all particulars.  The trial court noted, and we agree, that all four of the eyewitness accounts were materially consistent.  Each eyewitness testified that he or she saw the Firebird chase down the Tracker, swerve toward the Tracker, and, with the exception of Pysarenko, bump or push it off the road.  The “[m]inor inconsistencies in the testimony of the State’s witnesses do not destroy the credibility of these witnesses, and any variations in testimony were for the trier of fact to weigh.”  
People v. Talach
, 114 Ill. App. 3d 813, 820 (1983).

Defendant proceeds to argue that the testimony of his expert, Monick, about the accident contradicted the eyewitness accounts and disproved the opinion of the State’s expert.  Defendant essentially asks us to reweigh the evidence, placing paramount importance on Monick’s testimony.  That we may not do.  Rather, it is the trier of fact’s prerogative to “accept or reject as much of the testimony as it wishes, and [to] draw reasonable inferences therefrom.”  
People v. Nelson
, 246 Ill. App. 3d 824, 832 (1993).  Our review of the record shows that the trial court placed little weight upon any of the expert testimony.  Moreover, when viewed most favorably to the prosecution, Monick’s testimony indicated that the contact between the two cars was severe enough to cause indentations on the Firebird’s bumper and to transfer paint from the Tracker.  This is consistent with the eyewitness testimony.

Defendant also argues that the evidence indicated that he attempted to avoid striking the Tracker and that Weems was responsible for rolling the Tracker because he cut across three lanes of traffic and slammed on his brakes in front of the Firebird.  Again, this argument is based upon reweighing the evidence and ignoring any unfavorable eyewitness testimony.

Defendant’s related argument concerning the Tracker’s likelihood of rolling over is of limited relevance.  Even establishing the fact that the Tracker is a roll-prone car does nothing to invalidate the eyewitnesses’ testimony.  Each testified that he or she saw the Firebird chase, engage, and push the Tracker from the road.

Defendant also contends that there was no evidence to prove his knowledge or intent.  Defendant contends that the indictment charged him merely with knowing that his acts created a strong probability of causing great bodily harm.  We have already disposed of this argument and again note that all of the counts of the charging instrument may be considered.  See 
Johnson
, 231 Ill. App. 3d at 423. One of the counts of the indictment charged defendant with the knowledge that his actions created a strong probability of causing the death of Weems and Jones.

When we view the evidence most favorably to the prosecution, as we must, we conclude that defendant was proved guilty of first-degree murder beyond a reasonable doubt.

4.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his trial counsel provided him ineffective assistance in violation of his constitutional rights.  Defendant contends that his trial counsel’s ineffectiveness stemmed from the failure (1) to file a motion to dismiss the indictment; (2) to object to hearsay and incompetent evidence introduced in support of the State’s accident reconstruction expert’s opinion; (3) to introduce evidence that the Tracker was an unsafe vehicle; and (4) to object to the introduction of defendant’s criminal background at the jury waiver hearing or request a substitution of judges.  To show ineffective assistance of counsel, a defendant must satisfy both parts of the familiar 
Strickland
 test:  that his attorney’s representation was below an objective standard of reasonableness and that, but for his attorney’s unprofessional errors, there is a reasonable probability that the trial results would have been different.  
People v. Flewellen
, 273 Ill. App. 3d  1044, 1048 (1995).

We can dispose of three of the alleged unprofessional errors on the grounds that no prejudice accrued from trial counsel’s conduct.  Defendant asserts that trial counsel’s failure to contest the indictment amounted to ineffective assistance.  As we decided above, the indictment was valid, even under the stricter standard of review applied to pretrial challenges.  Thus, a motion to dismiss the indictment would necessarily have been denied, and trial counsel cannot be deemed ineffective for failing to file a futile motion.

Similarly, we found that no error accrued to the prosecutor’s statement on defendant’s eligibility for an extended sentence.  Defendant therefore cannot show that he was prejudiced by trial counsel’s inaction with regard to the statement.

Defendant also claims that trial counsel should have introduced documents showing the inherent instability and danger of the Tracker.  Contrary to defendant’s assertions, this information would not have changed the outcome of the trial.  The trial court determined that defendant hunted down the Tracker after the initial altercation, then rammed it and pushed it off the road.  That the Tracker was more prone to rollovers than other vehicles is of no moment, for it is undisputed that defendant’s vehicle struck the Tracker.  Defendant was charged with the knowledge that the action of striking another vehicle while traveling at expressway speeds created a strong probability of death or great bodily harm.  That defendant chose to strike a vehicle that was prone to rollover does not obviate the elements of the crime; defendant must take his victims as he finds them.  The State proved the necessary elements of the offense of first-degree murder (720 ILCS 5/9—1(a)(2) (West 1994)) beyond a reasonable doubt.  While it is a great tragedy that Cozette Jones died as a result of defendant’s actions, it is this sort of fortuity which separates the crimes of murder and attempted murder.  The outcome of the trial would not have changed even had trial counsel introduced evidence of the Tracker’s inherent dangers,  and therefore we cannot say that this amounted to ineffectiveness.

Defendant also contends that trial counsel was ineffective for failing to object to the State’s reconstruction expert’s testimony concerning the basis of his opinion.  The alleged incompetent testimony established the information upon which the State’s expert relied in forming his opinion.  Otherwise inadmissible evidence may be used to establish the foundation of expert testimony so long as it is the kind of information experts in the field reasonably rely upon.  
People v. Contreras
, 246 Ill. App. 3d 502, 510 (1993).  Here, Thompson relied upon the contents of police reports, measurements made by a state trooper whose job was to take the measurements, witness statements, photographs of the vehicles and scene, documents prepared by the Illinois Department of Transportation, and interviews with a certified mechanic.  We do not believe this information is beyond the pale of what experts in the field reasonably rely upon.  We note that defendant’s expert, Monick, testified that he usually reviews police reports and witness statements in forming his opinion.  Accordingly, we do not believe any error accrued as a result of the admission of the foundation to Thompson’s expert opinion.

Even if there were error, it was harmless beyond a reasonable doubt.  The trial court’s findings clearly indicated that it placed little, if any, weight upon any of the expert testimony at trial.  The question of weight to be placed on evidence is one for the trier of fact.  
Nelson
, 246 Ill. App. 3d at 832.  Even if the foundational evidence were erroneously admitted, we can find no prejudice where the trier of fact clearly disregarded it.  Accordingly, we hold that defendant did not receive ineffective assistance from his trial counsel.

5.  QUESTIONING ASCENSCIO

Defendant next contends that he was prejudiced by the State’s examination of Antonio Ascenscio, an inmate of the Du Page County jail at the same time as defendant.  Apparently, the State was attempting to elicit an incriminating statement that defendant purportedly made to Ascenscio.  Ascenscio repeatedly stated that he could not remember anything defendant said to him.  The prosecutor then apparently attempted to memorialize Ascenscio’s testimony with an eye to a future perjury prosecution in the following exchange:

“[Prosecutor]: Okay.  Do you remember at a time when you were with [defendant] that a news broadcast came on about a fatal accident that occurred around I-290 and I-355?

[Ascenscio]: Like I said, it was a long time.

Q: You’re saying you don’t remember that?

A: It’s been 14 months.  Over 14 months.

Q: I’m asking you now.  Do you remember that that happened around September 8
th
 of 1994?

A: I remember something, but I don’t remember when it happened.

Q: Okay.  Do you recall that when that news broadcast came on, that this gentleman here, [defendant], made a statement?

A: No.

[Defense counsel]: Judge, I’ll object to the leading.

THE COURT: No.  Overruled.

[Prosecutor]: Do you recall this gentleman in the courtroom made a statement back on September 8
th
 when that news broadcast was on?

[Ascenscio]: Uhn-hun.

Q: You don’t remember anything about what [defendant] said that day?

A:  No, I don’t.

Q: In particular, you’re saying you do not remember that the Defendant said, 'They shouldn’t have started it'?

A: No, I don’t, sir.  I don’t remember him saying nothing like that.

[Defense counsel]: Judge, --

THE COURT: It’ll be sustained.  He said he doesn’t remember anything.

[Prosecutor]: I’m actually trying to perfect the foundation, Judge, under oath, for possible future proceedings not involving [defendant].  For that purpose.

THE COURT: All right.

[Prosecutor]: And the other question I have for you, under oath, Mr. Ascenscio, is it your testimony that you do not remember, on that same day and that same occasion, that the Defendant additionally stated at that time, 'I rammed him'?

[Ascenscio]: I don’t remember, sir.

Q: No recollection of those events at all?

A: (No verbal response.)

Q: Has anything happened between now and last September that would impair your memory?

[Defense counsel]: Judge, I’m going to object at this time, at least, as it applies to the proceedings against defendant.

If there’s something else going on here, maybe we can do it off of this record.

THE COURT: I’ll sustain the objection.  I think what we’re getting into is an issue that was raised in a recent case that came down from the Illinois Supreme Court dealing with impeachment and dealing with when the State is disappointed with the testimony, where they’re actually impeaching.  It’s People versus Cruz.  It deals with these types of situations.

I’ll have to sustain it at this time.”

Defendant contends that the foregoing exchange was merely the State’s attempt to place defendant’s purported statement, “I rammed him,” before the trier of fact.  We disagree.

An examination of the exchange reveals that the prosecutor had informed the court that he was pursuing the questioning “for possible future proceedings not involving [defendant],” and the trial court gave him leave to proceed.  Further, the trial court sustained defendant’s objection where the State asked if Ascenscio remembered defendant saying “I rammed him.”  Thus, the statements did not become part of the record.

Moreover, “[i]n a bench trial, it is presumed that the court considers only admissible evidence.  However, without specific evidence that the trial court placed undue emphasis on unreliable evidence, the reviewing court is unable to determine that the alleged error or omission was so prejudicial that it deprived the defendant of a fair trial.”  
Dugan
, 237 Ill. App. 3d at 698.  Here, rather than placing “undue emphasis” on Ascenscio’s testimony, the trial court did not mention it in its recapitulation of the evidence.  In fact, the trial court placed little weight on any purported jailhouse statements, characterizing them as “allegedly made by the defendant.”  Defendant has presented no evidence to suggest that the trial court improperly considered the examination of Ascenscio in making its determination of defendant’s guilt.  Accordingly, we determine that defendant incurred no prejudice from the State’s examination of Ascenscio.

6.  MISSTATED FACTS

Defendant next contends that he was denied due process of law when the trial court “grievously misquoted and misconstrued the facts and the law in the case at bar.”

Defendant first argues that the trial court misconstrued the evidence when it stated that 

“the confrontation was somewhat escalated by Mr. Weems at that point, when he exited the Tracker with this club that has been marked as an exhibit.

There was conflicting testimony, but it’s fairly clear to the Court that at that point [defendant] did attempt or did mace either [or] both Mr. Weems or [
sic
] Miss Jones.

Mr. Weems also then struck [defendant’s] vehicle, possibly on the roof of the car, but certainly all indications were that he struck the car on the rear spoiler, causing something they call spidering.

If that would have been the end of the case, obviously we wouldn’t be here today.  However, what happened was [defendant] we know exited that area very quickly, really no dispute there.

At this point the Tracker is chasing or attempting to chase down the Firebird.  As we know, that never occurred. 
 The Firebird, [defendant], pulled off, got gas, and we know that because he’s got a receipt for gas that’s been marked into evidence.”  (Emphasis added.)

The court’s point in the above-quoted language is that the Tracker was unsuccessful in chasing down the Firebird because the Firebird exited the expressway quickly.  Defendant attempts to manufacture a controversy by wrenching the highlighted language out of context and regarding it in isolation.  After reviewing the record, defendant’s argument concerning the highlighted portion of the foregoing quote is without merit.

Next, defendant claims that the court misstated the evidence by attributing ownership of the Firebird to defendant.  Defendant contends that the clear, unrebutted evidence indicated that Don Chiola owned the car.  According to defendant, because he did not own the car, he therefore had no motive to retaliate for the damage Weems inflicted upon the Firebird.  Defendant’s argument is without merit.

While the court may have been technically in error in referring to the Firebird as defendant’s car, we first note that defendant himself also refers to the Firebird as 
his
 car.  For example, in defendant’s brief on appeal, it was stated that defendant “applied his brakes”; that Nick “Chiola clearly stated that [defendant] applied his brakes”; that “all the evidence indicates that the deceased’s vehicle recklessly cut in front of the defendant’s automobile.”  While defendant did not hold legal title to the car, he was clearly in possession and control of it.  It is this sense of possessing and operating the vehicle to which the trial court referred when it described the Firebird as defendant’s car.  In any event, the question of ownership is not in issue in this case, and any misstatement of ownership of the Firebird by the trial court is immaterial.

Defendant’s argument that without ownership of the Firebird he had no retaliatory motivation is unfounded.  The evidence indicated that both defendant, who was the Firebird owner’s friend and business partner, and Nick Chiola, the Firebird owner’s brother, became upset upon discovering the damage to the Firebird.  It is their anger and the subsequent events which provided evidence of defendant’s motive.

Next, defendant once again takes issue with the language of the indictment, claiming that the trial court misstated the law by stating “The Appellate Court in our district discusses the difference between knowledge, knowing, defined under the law, and whether or not [defendant] by his actions knew that his acts created a strong probability of death or great bodily harm.”  We have previously disposed of this issue.  The court’s statement was a correct statement of the law.

Defendant next asserts that the trial court misconstrued the evidence concerning brake lights.  Defendant argues that the court believed only Nick Chiola testified about the Tracker’s use of its brakes.  Our review of the record shows that Nick Chiola was the only witness to extensively testify about the Tracker’s use of brakes.  We do not believe that the court misconstrued or misstated the evidence.

Defendant also asserts that the trial court misconstrued the evidence concerning defendant’s intent.  Defendant does not believe the trial court’s statement that “it is clear to the Court that [defendant], after realizing that damage had been done to his car after he was getting gas, then sought out, the State used the words ['] hunted down['] the Geo Tracker,” was warranted.  We fail to see how this statement was unwarranted in light of the eyewitness testimony which indicated that, after the Firebird located the Tracker, however fortuitously, the Firebird wove in and out of traffic and, upon pulling even with the Tracker, began swerving into its lane.  We agree with the trial court’s characterization of defendant’s actions as “hunting down” the Tracker.  After examining defendant’s arguments, we do not believe that defendant has shown that the trial court misconstrued or misstated the evidence.

7.  EXPERT TESTIMONY

Defendant next argues that the trial court erred by admitting the State’s expert accident reconstruction testimony.  Defendant contends that the State’s expert usurped the finder of fact’s role.  We disagree.

It is well settled, in both criminal and civil contexts, “that expert opinion testimony on an ultimate fact or issue does not impermissibly intrude on the fact finder’s role,” because the fact finder does not have to accept the expert’s opinion.  
Zavala v. Powermatic, Inc.
, 167 Ill. 2d 542, 545 (1995).

Additionally, expert reconstruction testimony should be permitted in addition to eyewitness testimony “where it is necessary to rely on knowledge and application of principles of physics, engineering, and other sciences beyond the ken of” the trier of fact.  
People v. Rushton
, 254 Ill. App. 3d 156, 163 (1993).  The trial court’s decision will not be disturbed absent an abuse of discretion.  
Rushton
, 254 Ill. App. 3d at 163.

While we perceive no abuse of discretion in admitting Thompson’s testimony, even if the trial court erred by admitting Thompson’s reconstruction evidence, it was harmless beyond a reasonable doubt.  The trial court did not rely on the opinion of the State’s expert in determining defendant’s guilt.  Even if it should not have been admitted, it was ignored and, therefore, had no impact upon the outcome of the trial.  Accordingly, defendant was not prejudiced by the admission of Thompson’s testimony.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and DOYLE, JJ., concur.