2023 IL App (2d) 210597-U
No. 2-21-0597
Order filed August 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-580 |
| STEVEN J. McCUISTON, | ) ) | Honorable Jeffrey MacKay, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1　*Held*: Trial court affirmed where the evidence sufficiently proved defendant guilty of lesser included offense of battery, the proper procedure for impeachment on cross-examination was not observed, court properly refused to consider proffered impeachment, and the court considered the relevant factors in mitigation in sentencing defendant to a term of imprisonment well within the statutory range for battery.

¶ 2　Defendant, Steven McCuiston, was prosecuted for the offense of hate crime, arising from an altercation with a Lyft driver, Raheemunissa Begum. Following a bench trial, he was convicted of two counts of the lesser-included offense of battery and sentenced to 14 days in jail with credit for one day served and 18 months' probation. McCuiston appeals, and we affirm.

¶ 3                                    I.  BACKGROUND

¶ 4     On March 8, 2019, the Bloomingdale Police Department charged McCuiston, by way of felony complaint, with hate crime (720 ILCS 5/12/7.1 (West 2018)) and criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2019)), and, by way of misdemeanor complaint, with assault (720 ILCS5/12-1(a) (West 2018)). On the same day, Begum filed a civil complaint arising from the same incident and accusing McCuiston of racially motivated assault and battery. An indictment superseded the complaints, and a bench trial ensued.

¶ 5     Three witnesses testified at trial: Raheemunissa Begum, the driver of the Lyft; Steven McCuiston, her passenger; and Officer Iwanicki of the Bloomingdale Police Department,.

¶ 6                              Raheemunissa Begum

¶ 7     Early in the morning on March 8, 2019, Begum, a 53-year-old Lyft driver, picked up defendant McCuiston and his female companion (later identified as his wife) at the Anyways Pub in Bloomingdale, Illinois. Begum is a Muslim, born in India where she lived for 15 to 16 years before moving to the United States. She greeted the passengers when they got in the car, but they did not respond. McCuiston slammed the car door "real hard."

¶ 8     Shortly after leaving the Anyways Pub parking lot, Begum activated her right turn signal at a stop sign. McCuiston, joined by his partner, told her to turn left. She refused, saying it would be illegal according to the posted signs. As she proceeded to the right, both passengers began cursing, calling her a "fucking Muslim" and a "fucking Muslim terrorist." When it was permissible, she executed a U-turn.

¶ 9     McCuiston was extremely angry, continuing to call her "a fucking Muslim terrorist;" he said, "we are coming after you," "we'll kill you," "we'll get rid of you from this country." When he said, "we will break your neck," Begum stopped the car and called 911. She felt McCuiston

pull on her jacket and "hit" her right shoulder. Still on the 911 call, she took the phone from its cradle, got out, and walked to the front of the car. McCuiston, who had been sitting in the backseat on the right, climbed to the front seat and exited from the driver's side. He followed her as she moved away from the car. When she faced him, she saw his raised fist and turned away; he hit her on her right back shoulder, causing pain. Then he returned to the car and broke the handle on the driver's side back door. The police arrived shortly thereafter.

¶ 10    An audio tape of the 911 call was entered into evidence. In court a portion of the tape was played, in which a male voice could be heard saying, "you fucking Muslim terrorist."

¶ 11    On cross-examination, defense counsel sought to impeach Begum's testimony with prior inconsistent statements in her civil complaint. Counsel proposed that the court take judicial notice of the civil complaint; the State objected on hearsay grounds. In sustaining the objection, the court instructed counsel to impeach Begum with her specific statements, if that was his intention. Counsel did not do so.

¶ 12                                  Officer Iwanicki

¶ 13    When Officer Iwanicki arrived on the scene, he spoke first with Begum, who was walking away from the vehicle parked on the side of the road. She was "scared," "trembling," and "just upset about the whole situation." Iwanicki learned from Begum that the male passenger in her car became upset when she made a right-hand turn. He also learned from her that the passenger had pulled off the rear driver's side door handle and that there was damage to the interior of the vehicle. When he viewed the car, he observed that the door handle had been ripped off and that the ceiling handle on the rear passenger side had been broken.

¶ 14    Officer Iwanicki also spoke with McCuiston. Based on his observations—"blood-shot glassy eyes, odor of alcohol on his breath," "moving back and forth and unsteady"—Iwanicki

concluded that McCuiston had been drinking and was under the influence of alcohol at the time. McCuiston said that he and his wife called for a Lyft or Uber, were picked up, and "as soon as they got in the car the driver became angry and crazy." After a few minutes of driving, she stopped the car and told him she could not drive anymore and that they needed to get out. After Begum got out of the car, McCuiston climbed over the seat to get out because, he said, he could not get the door open where he was sitting. According to McCuiston, when he went back to the car to try to get his wife out, the handle came off because the door was locked.

¶ 15    When Officer Iwanicki asked about his use of ethnic slurs as described by Begum, McCuiston stated, "I can't believe that you would take her side in this." He seemed indignant and denied having said those things. When Officer Iwanicki went to the car to speak with McCuiston's wife, she was getting out of the car through the passenger's side rear door, which was partially opened. In Iwanicki's opinion, McCuiston's wife was also inebriated. Officer Iwanicki placed McCuiston under arrest at approximately 2:20 a.m.

¶ 16    On cross-examination, Officer Iwanicki testified that when he arrested McCuiston he took the evidence and the "whole situation" under his consideration. He did not observe any signs of physical injury on Begum. He observed the broken car door handle at the scene but did not recover it nor place it into evidence as he did not think it was needed. He testified that according to Begum and based on his investigation, the problems started after the right turn was made.

¶ 17    Following Iwanicki's testimony, the State rested, and defendant moved for a directed finding. The trial court denied defendant's motion as to counts 1 and 3, the hate crime charges premised on battery, but granted the motion as to counts 2 and 4, the hate crime charges premised on criminal damage to property.

¶ 18                        Steven J. McCuiston

¶ 19    McCuiston testified that he did not slam the door after he and his wife got in the Lyft car. He did not tell Begum to turn left at the stop sign; rather, he told her to go straight through to the second or third light. After she proceeded to turn right at the stop sign and make the U-turn, he remained miffed and was "definitely aggravated." She had a "really bad attitude." She said, "I'll drive whichever way I want."

¶ 20    Right after the U-turn, "everything exploded." It "really escalated when she turned and looked at both of us [and] called us racist fucking pigs against Muslims. She kept using the words fucking pigs and that's when I got really agitated." He and Begum were exchanging "heated" and "bad" language. At this point, his wife said, "Both of you shut the F up and pull over and let us out of the car." She demanded that they get let out of the car right there.

¶ 21    Begum continued to drive for another 10 seconds, then stopped the car. McCuiston and his wife tried to open the car doors, which were locked. They could see that Begum was on the phone.

¶ 22    When McCuiston first got in the car, he had no idea Begum was Muslim. When they were moving, she was screaming at them about being racist. He called her a "fucking terrorist" and told her to pay attention to the road and get them home. That's when his wife put his hand over his mouth and said, "would you both shut up and let us out of the car."

¶ 23    McCuiston did not touch Begum before she got out of the car. She went about 10 to 15 feet towards the front of the car and stayed there, talking on her phone. McCuiston and his wife started panicking, and he climbed over the front seat and got out on the driver's side. His wife said to try to open the backdoor from the outside. Mad and frustrated, he overpulled the handle and broke it.

¶ 24    He never chased the driver, never tried to punch her, never slapped her. He and his wife were originally upset due to the directions, but "she elevated [sic] with her racist comments."

¶ 25    On cross-examination, McCuiston stated that he had never dealt with a Lyft driver like Begum before. He never called any other Muslim female driver a terrorist in the past. Some of the language he directed at Begum was: "a cunt; a fucking bitch; pay attention to the road; I'm the paying customer; how are you acting this way; what the hell is wrong with you." He was mad because she defied what he asked her to do. She did not make a mistake; she knew exactly what she was doing. He called her a fucking Muslim and also a fucking terrorist. She called him a white racist pig first, out of nowhere, spontaneously.

¶ 26    A portion of the 911 audio tape was played in which Begum could be heard stating that defendant was hitting her. McCuiston testified that Begum was lying about his striking her. He denied threatening to kill Begum or to break her neck.

¶ 27                              The Trial Court's Rulings

¶ 28    At the close of the parties' testimony, the court stated that it would take judicial notice of the first five pages of the complaint and would consider any relevant prior inconsistent statements. On March 25, 2021, citing the 911 tape and Begum's credible testimony, the court ruled that defendant committed a battery in that he "knowingly made contact of an insulting or provoking nature with Ms. Begum." The court found McCuiston to be less credible than Begum and noted that he demonstrated his lack of self-control on the stand. While McCuiston's comment on the tape was "per se racist without a doubt, the court found that the battery was "race neutral," motivated by McCuiston's intoxication, his anger at Begum's refusing to follow his driving directions, and the fact his wife was locked in the backseat of the car. The court found defendant guilty of the lesser-included offense of battery in counts 1 and 3 and merged the two counts for purposes of sentencing.

¶ 29    The court sentenced McCuiston to 18 months of probation and ordered him to serve 14 days in jail with credit for one day served. In addition to other terms, McCuiston was ordered to complete anger management, a racial bias class, and evaluation, counseling, and testing to be conducted by the Probation Department.

¶ 30    The court denied McCuiston's motions to reconsider the sentence and for judgment notwithstanding the verdict [*sic*] and/ or new trial. This timely appeal ensued.

¶ 31                                    II. ANALYSIS

¶ 32                                    A. Battery Offense

¶ 33    Defendant argues first that the State failed to prove his guilt beyond a reasonable doubt for the lesser-included offense of battery. When this court considers a challenge to a criminal conviction based upon the sufficiency of the evidence, it is not our function to retry the defendant. *People v. Hall*, 194 Ill. 2d 305, 329-30 (2000). Rather, our inquiry is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord People v. Cox,* 195 Ill. 2d 378, 387 (2001). The trier of fact is responsible for assessing the credibility of the witnesses, determining the appropriate weight of the testimony, and resolving conflicts or inconsistencies in the evidence. *People v. Evans*, 209 Ill. 2d 194, 211 (2004). The trier of fact is not required to disregard inferences that flow from the evidence or search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *Hall*, 194 Ill. 2d at 332.

¶ 34    "A criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Jackson*, 2020 IL 124112, ¶ 64. "A conviction may be upheld based

on the positive and credible testimony of a single witness, even if this testimony is contradicted by the defendant." (Internal quotation marks omitted.) *People v. Fretch*, 2017 IL App (2d) 151107, ¶ 95.

¶ 35    To prevail on the lesser-included offense of battery, the State had to prove that McCuiston "knowingly without legal justification, [made] physical contact of an insulting or provoking nature" with Begum. 720 ILCS 5/12-3(a)(2) (West 2018). Conduct need not cause bodily harm in order to be insulting or provoking. *People v. DeRosario*, 397 Ill. App. 3d 332, 334 (2009). McCuiston contends that the "only material fact in dispute" on appeal is whether he "made physical contact at all with Begum." Begum testified that he hit or slapped her; McCuiston testified that he did not.

¶ 36    McCuiston's argument rests on his claim that Begum was not a credible witness. With respect to whether physical contact occurred, he states, "the evidence at trial was wholly inconsistent with a six foot four, enraged male striking Begum with either a slap or a fist resulting in pain." He ignores this evidence: Begum testified that McCuiston struck her in the vehicle and she felt pain and "some hurt"; she also testified that when McCuiston made contact with her shoulder outside of the vehicle, it was a "very hard hit" and she felt pain; finally, Begum can be heard on the tape of the 911 call stating, "he's hitting me now." The trial court noted additionally that "[on the stand] you could hear the victim's emotion in her voice and on the tape she did sound scared." Officer Iwanicki also observed that Begum appeared scared; she was trembling, her hands were shaking. The trial court relied on all of this evidence in determining that "without question" a battery had occurred. The court's determination was not against the manifest weight of the evidence.

¶ 37 None of McCuiston's remaining claims regarding Begum's credibility are corroborative of any fact of consequence as to whether McCuiston committed battery upon Begum; moreover, nearly all of them fall under the category of "he said/ she said." The trial court resolved the contradictions in their testimony by finding Begum more credible than McCuiston. We decline McCuiston's invitation to second guess the finder of fact's credibility determinations. *See People v. Brown*, 2013 IL 114196, ¶ 48 (a reviewing court will not substitute its judgment for that of the trier of fact regarding the weight of the evidence and the credibility of the witnesses).

¶ 38                    B. Cross-examination with Civil Complaint

¶ 39 McCuiston next contends that he was precluded from using Begum's civil complaint for all available prior inconsistent statements due to an apparent ambiguity involving the portions of the document the trial court considered, as well as the failure of the court to perform a complete *in camera* review. The State responds that "any error that occurred as to introduction of the civil complaint must be attributed to [d]efendant and the incorrect way he sought to introduce inadmissible hearsay."

¶ 40 The civil complaint was admissible for the limited purpose of establishing prior inconsistent statements. *People v. Guerrero*, 2021 IL App(2d) 190364, ¶ 44. "[T]he procedure to impeach a witness with his or her prior inconsistent statements requires the questioner to:

> (1) direct the witness to the time, place, and circumstances of the statement; (2) use pointed questions to confront the witness with the content of the prior statement, asking whether he or she made the statement; and (3) give the witness the opportunity to explain the inconsistency. [Citation.] Once the impeaching party lays the necessary foundation, he or she must complete the impeachment. [Citation.] To complete the impeachment when

the witness denies making the statement, the impeaching party offers extrinsic evidence

showing the witness made the statement. [Citation.] *Id.* ¶ 45.

The scope of cross-examination is within the discretion of the trial court, and we will not reverse

the court absent an abuse of discretion that resulted in prejudice to the defendant. *McDonnell v.*

*McPartlin*, 192 Ill. 2d 505, 533 (2000); *People v. Boand*, 362 Ill. App. 3d 106, 131-32 (2005). An

abuse of discretion occurs only when a trial court's decision is arbitrary, fanciful, or unreasonable.

*People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 39.

¶ 41     The above procedure for perfecting impeachment was not observed at trial; nor did

McCuiston avail himself of the opportunity presented by the trial court to make an offer of proof.

At the end of the trial, McCuiston improperly transferred the burden of going forward with

impeachment to the trial court. On appeal, he cites no authority for his arguments that the trial

court erred in not sufficiently reviewing the civil complaint *in camera* for its impeachable portions.

Further, he makes no argument or offer of proof as to what the impeachments might be.

Accordingly, we determine that the trial court did not abuse its discretion.

¶ 42                                         C. Sentencing

¶ 43     McCuiston was sentenced to 14 days' imprisonment and 18 months' probation, in addition

to other terms, for battery. He argues that the sentence was excessive "in light of the facts and

evidence at trial, as well as his lack of criminal history, and other statutory factors in mitigation."

      "It is well settled that the trial court has broad discretionary powers in imposing a

sentence [citation] and the trial court's sentencing decision is entitled to great deference

[citation]. The trial court is granted such deference because the trial court is generally in a

better position than the reviewing court to determine the appropriate sentence. The trial

judge has the opportunity to weigh such factors as the defendant's credibility, demeanor,

general moral character, mentality, social environment, habits, and age. [Citations.]
Consequently, the reviewing court must not substitute its judgment for that of the trial court
merely because it would have weighed these factors differently. [Citation.]" *People v.
Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 44    McCuiston's sentence was well within the statutory guidelines. See *People v. Kelchner*,
221 Ill. App. 3d 25, 32 (1991) (an imposed sentence within statutory limits will not be set aside
absent an abuse of discretion). His conviction for battery, a Class A misdemeanor, carried a
possible term of up to 364 days imprisonment. 730 ILCS 5/5-4.5-55(a) (West 2018). McCuiston
was sentenced to 14 days in jail with credit for one day served. His period of probation was not to
exceed 2 years. 730 ILCS 5/5-4.5-55(d). He was sentenced to 18 months.

¶ 45    McCuiston contends that his sentence was excessive based on several mitigating
circumstances, including his relative lack of criminal history (he was under court supervision
several years ago for driving under the influence), the provocation for his conduct, and the
unlikelihood that he would commit another crime or fail to comply with the terms of his sentence.
Initially, McCuiston claims in mitigation that the evidence was unclear as to whether he made
contact with Begum "with a fist or open palm," and did not show that the physical contact resulted
in "physical injury, physical marks, or even a hospital visit."

¶ 46    Whether McCuiston struck Begum with a "fist or open palm" is a distinction without a
difference; what matters under the charging statute is whether he made "physical contact of an
insulting or provoking nature" with Begum. See 720 ILCS 5/12-3(a)(2) (West 2018). The evidence
showed that McCuiston not only made such contact with Begum but also caused her physical harm.
Still, McCuiston argues that he did not cause or threaten "serious" physical harm. See 730 ILCS
5/5-5-3.1(a)(1) (West 2018) (listing among factors in mitigation "defendant's criminal conduct

neither caused nor threatened serious physical harm to another"). While McCuiston contends that his conduct caused no serious physical harm, he concedes that "a trier of fact may find that [he] threatened serious physical harm." We have no reason to doubt that the trial court properly considered this factor in mitigation. See *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 38 (reviewing court presumes the sentencing court considered all relevant factors and mitigating evidence presented at the sentencing hearing absent some indication to the contrary).

¶ 47   In fact, at both the sentencing hearing and the hearing on McCuiston's motion for reconsideration, the trial court expressly stated that it had considered all of the statutory factors in mitigation. The record establishes the court's consideration of the factors McCuiston raises on appeal. Since McCuiston has not shown that the sentence was based on improper considerations, we conclude that the trial court did not abuse its discretion in sentencing him to a term of imprisonment well within the applicable statutory range for battery.

¶ 48                                    III. CONCLUSION

¶ 49   For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 50   Affirmed.